405 So.2d 564 (1981)
Louella Cain MILLER, Plaintiff-Appellant,
v.
Virgle E. MILLER, Defendant-Appellee.
No. 8123.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1981.
*565 Corne & Block, Gerald J. Block, Lafayette, for plaintiff-appellant.
William J. F. Gearheard, Howard Martin, Lafayette, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and DOUCET, JJ.
CULPEPPER, Judge.
This is a suit for partition of community property. The defendant answered denying the listed movables and immovables were community property and asking for various set-offs and counter-claims against the community. After a hearing, a post-trial conference was held in the judge's chambers and plaintiff and defendant agreed to the inclusion of certain items in the community and a division thereof, and to the payment of certain amounts to each party out of the sale of community assets. A few issues could not be agreed on by counsel, and the court ruled on those separately. A minute entry was made on May 2, 1980 setting forth the 11 items agreed upon and the three items upon which the court decided. Pursuant to this minute entry, judgment was rendered on June 2, 1980. Plaintiff appealed as to one item. Defendant answered the appeal as to certain other items.
ISSUES PRESENTED ON APPEAL
The plaintiff contests only one of the trial court's rulings, the holding that plaintiff is entitled to one-half of the amount deposited to Mr. Miller's account in the Gray Tool Company Profit Sharing Plan but not to one-half of the earnings from these deposits. The defendant's answer to the appeal *566 presents eight issues which will be discussed in the order listed in his brief.
GENERAL FACTS
Mr. and Mrs. Miller were married on January 23, 1962. A petition for judicial separation was filed on August 2, 1974 and the community was dissolved as of that date. A judgment of separation was subsequently rendered containing an alimony pendente lite award in favor of Mrs. Miller in the sum of $75 per month. Appellee's brief states the alimony pendente lite award was later disallowed in a judgment on a new trial on about July 5, 1977, but this is not clear from the record, since neither of the judgments referred to is in the record before us. The parties were divorced by judgment dated August 10, 1977. This suit for partition of community property was filed on July 26, 1978.
PLAINTIFF-APPELLANT'S CLAIM TO THE PROFIT SHARING PLAN
On appeal, Mrs. Miller contests only the portion of the judgment decreeing that she is entitled to one-half of the deposits in Mr. Miller's account in the profit sharing plan but not one-half of the earnings therefrom. The evidence shows Mr. Miller was employed by Gray Tool Company on November 13, 1961. The employer made all contributions to the plan on behalf of the employee. By the time of the termination of the community between plaintiff and defendant on the date the suit for separation from bed and board was filed, August 2, 1974, a total of $8,137.54 had been paid into the fund by the employer for Mr. Miller's account. The trial judge awarded plaintiff $4,068.77, i. e., one-half of the total amount deposited to Mr. Miller's account as of August 2, 1974.
The record shows that under the plan an employee must participate for 12 years before acquiring a vested right to receive 100% of the contributions to his account. Up until that time, he has a vested right to receive a lesser percentage, depending on the number of years of his employment. The administrator of the plan testified that Mr. Miller was only 90% vested as of the date of dissolution of the community, since he had been employed by Gray Tool Company for only 11 years. If his employment had ceased on the date of dissolution of the community, he would have had a right to draw 90% of the deposits contributed to his account, or the sum of $7,323.79.
The money contributed to the account is placed in an investment program by the employer. For contributions and earnings the plan year ends September 30. From the date of Mr. Miller's employment on November 13, 1961 to September 30, 1978, the end of the last plan year before the trial in 1979, the $7,323.79 to which Mr. Miller had a vested right earned the total sum of $10,102.53. The total of these two sums is $17,426.32, of which Mrs. Miller contends she is entitled to one-half, or the sum of $8,713.16. We agree.
Louisiana Civil Code Article 2334 classifies as community that property acquired by the husband and wife during marriage. C.C. Article 2402 adds to the definition of community property:
"... the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may require during the marriage, either by donations made jointly to them, or by purchase, or in any other similar way, ...."
The above rule applies even if the acquisition is made only in the name of one of the spouses. In that case, the time of the acquisition controls rather than the one who made it. Finally, Article 2406 is the authority for division of the assets of the community into equal portions between the husband and wife at the dissolution of the marriage.
In support of her position that she is entitled to share in the earnings of the account, as well as the contributions, plaintiff relies upon T. L. James & Company, Inc. v. Montgomery, 332 So.2d 334 (La. 1976); Sims v. Sims, 358 So.2d 919 (La. 1978); and Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir. 1978). The Supreme *567 Court in T. L. James, supra, settled the question of whether an account in a pension or profit sharing plan consisting only of contributions from the employer is community. The court answered in the affirmative, decreeing that when a community is dissolved, the employee's spouse is entitled to be recognized as owner of one-half of the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community. The case concerned both a defined benefits plan with specific guaranteed benefits and a defined contributions plan in which a separate account was kept for each employee as the sole source of payments of benefits. The defined contribution plan, the type with which we are dealing in the instant case, involves a fund which fluctuates in value depending on market value, gains, income and forfeitures within the plan. The employee had died, so that benefits were payable and the amounts due were ascertainable. The court did not make a distinction between the types of plans nor did it consider the effects of the plans' vesting provisions of the right to share. To classify the funds in each plan as belonging to the first community, separate estate of the husband or second community, the court utilized a straight proportionate interest approach, such that the value of the right to share proportionately in the fund, acquired by virtue of each contribution, falls into the community during which the contribution was made. From this the resultant method of apportionment was reached by the court:
"The value of each contribution paid into the fund shall be a share of the fund of the same proportion that the contribution's amount bears to the total amount of all contributions paid into the fund to the employee's account."
Sims v. Sims, supra, involved a Federal Retirement Plan in which both employer and employee made matching contributions to the fund. The annuity was based not on contributions, but on average pay, number of years of creditable service and age. The court in a footnote recognized that this was a defined benefits plan and noted the suggestion of Professor Gerald LeVan in Allocating Deferred Compensation in Louisiana, 38 La.L.Rev. pg. 35 that allocation in such a plan should be determined on the basis of benefits purchased during the community rather than the amount of the community's contribution, since there is no relation between contributions and benefits. It was noted there that the community interest stems not only from contributions made by community funds, but also by reason of any right to receive proceeds attributable to such employment during the community. To support her position that she is entitled to a one-half interest in the earnings on the funds in Mr. Miller's profit sharing, plaintiff argues that implicit in Sims is the recognition that "a wife's interest in an annuity or pension not payable until some future date should include the earnings on that portion considered a community asset." This position comports with the principles of Louisiana Civil Code Article 2402 quoted above.
The trial and intermediate courts in Sims had held that the wife's interest in the husband's pension rights was limited to one-half the cash contributions at date of dissolution of the community, as did the trial court in the instant case. The Supreme Court reversed the decision and specifically overruled Langlinais v. David, 289 So.2d 343 (La.App. 3rd Cir. 1974), which had taken the same approach, holding that the wife was entitled to receive one-half of all benefits payable to the husband. It further held that the right to receive benefits under a retirement plan is a community asset to the extent attributable to employment during the community, and that the wife was entitled to present recognition of her interest in pension rights when they became payable to or for the husband. The community interest in the payments was defined as the proportionate part of them resulting from the spouse's employment or contributions during the community expressed in the following ratio:
*568
Portion of pension attributable to creditable
service during existence of community
 (19 years, 5 months) × ½ × annuity (or
---------------------------------------------
Pension attributable to total creditable lump-sum payment)
service (still not determined) "
The Sims equation has been utilized in at least two subsequent decisions by intermediate courts, including Thrash v. Thrash, 387 So.2d 21 (La.App. 3rd Cir. 1980), writ denied, La., 393 So.2d 745, and Kennedy v. Kennedy, 391 So.2d 1193 (La.App. 4th Cir. 1980).
Plaintiff further relies on Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir. 1978), decreeing that income from the community from the time of dissolution of the community until final partition was to be divided equally between the parties.
Defendant's brief merely states that he agrees with the trial court's disposition regarding the profit sharing plan. He cites no cases in support of his position. Indeed, with the overruling of Langlinais, supra, by the Louisiana Supreme Court in Sims, supra, there is little or no jurisprudential support for awarding the non-employee spouse only one-half the contributions to a pension or profit sharing account. Thus, there appears to be little doubt that the wife is entitled to have recognized her one-half interest in the entire amount shown attributable to the community, including earnings, according to the authority in T. L. James and Sims, supra.
Here, as in T. L. James, we have a defined contribution plan. The employee continues to be employed such that benefits are not yet payable and the amount thereof is unascertainable. The portion of the account on which the employee is entitled to draw is determined by the number of years of service, as in Sims. However, Sims involved a defined benefit plan rather than a defined contributions plan. There is, therefore, a basis for distinguishing this case from Sims and going back to the straight proportionate interest approach under T. L. James, which would disregard the fact that the husband was not entitled to draw on 100% of his account. In that case, the wife would be entitled to recognition of her one-half interest in the full amount of $8,137.40, plus the earnings thereon. There was no testimony as to the exact amount of earnings on this figure. There may have been none attributable to the remaining 10% of the account in which defendant did not have a vested right. By the same token, there may have been earnings attributable to the remaining $813.61, which should be included under this approach. If so, it would be improper to fail to include them. The other alternative is to disregard the distinction between this case and Sims and take into account the percentage of the funds from which the husband was entitled to draw at the date of dissolution of the community. The result would be, as plaintiff is seeking, recognition of the wife's one-half interest in 90% of the account, plus the earnings on that amount testified to by the company representative. We agree.
DEFENDANT'S CONTENTIONS IN ANSWER TO THE APPEAL
We will now discuss in the order presented in his brief the eight contentions by defendant in answer to the appeal.
The first of defendant's eight contentions is that the trial judge failed to allocate between the parties the proceeds received from the rental of the community home. This is in error. Both the minute entry reflecting the agreement of the parties at the post-trial conference and paragraph 5 of the judgment appealed state that the family home is to be sold "and rentals received from the rental of the aforesaid house are to be divided equally between the parties after payment of commission and the fee for preservation of the premises as reflected by the records of Mr. Joseph Anzalone."
Defendant's second contention is that he is entitled to a credit against the community for a total of $2,625 in alimony pendente lite of $75 per month which he paid to plaintiff under the judgment of separation, before this alimony was disallowed on a new trial. This argument has no merit. In Gondrella v. Gondrella, 347 So.2d 938 (La.App. 4th Cir. 1977), the court stated the general rule that previous payments *569 of alimony pendente lite do not form the basis for a credit to a husband from community funds, because the obligation to pay such alimony arises from the marriage and is not a debt of the community. Although under special circumstances the court has the discretion to diminish or eliminate alimony retroactively, as for instance in Graval v. Graval, 355 So.2d 1057 (La.App. 4th Cir. 1978) where the court found the wife had concealed her fulltime employment, no such special circumstances are shown by the record before us in the present case. The general rule is therefore applied.
Defendant's third contention is that he should be given credit for one-half of an alleged promissory note in the sum of $4,400 allegedly given by defendant to his sister to obtain funds to make the down payment on the community home. This and some of the other claims by defendant fail for lack of proof. The only evidence is the testimony of the defendant that the funds were borrowed during the marriage and were used for the down payment on the home. The trial judge stated the evidence was not sufficient to show defendant was entitled to this credit. The trial judge was not clearly wrong in this finding of fact.
Defendant's fourth contention is that the amounts of attorneys' fees paid by him to his three attorneys, namely, Kenneth Mayers (apparently defendant's attorney in the separation proceedings) in the amount of $800, Howard Martin (apparently defendant's attorney in the divorce proceedings) in the amount of $1,830, and William Gearheard (defendant's attorney in the present partition proceeding) in the amount of $7,378.47 should be paid from assets of the community. In the judgment appealed in this partition suit, the trial judge ordered that attorneys' fees in the amount of $5,000 be awarded to J. Minos Simon, Ltd., attorney for Louella Cain Miller, and that an equal sum of $5,000 be paid to William J. F. Gearheard, attorney for Virgle E. Miller, said attorneys' fees to be paid from the assets of the community. This was not an item agreed to by the parties in the post-trial conference, as shown by the minute entry. Defendant agrees that the sum of $5,000 should be paid to plaintiff's attorney, but he argues that this $5,000 should be added to the amounts shown above which defendant actually paid to his three attorneys, making a total of $15,008.47, and that defendant should receive one-half of that amount, or $7,504.24, from the community assets.
The question of attorneys' fees is confusing. In the first place, the law is clear that neither plaintiff's nor defendant's attorney is entitled to any fees for services rendered in connection with this partition proceeding, since it is contested. Talbert v. Talbert, 199 La. 882, 7 So.2d 173 (1942); Lane v. Lane, 375 So.2d 660 (La.App. 4th Cir. 1978); Donica v. Donica, 347 So.2d 1259 (La.App. 1st Cir. 1977); LSA-C.C.P. Article 4613. The law is also clear that neither plaintiff nor defendant is entitled to recover from the community attorneys' fees for services rendered in the divorce proceedings, where the community had been previously extinguished in the separation suit. Palmatier v. Palmatier, 394 So.2d 731 (La. App. 3rd Cir. 1981). Thus, the only attorneys' fees which either plaintiff or defendant are entitled to recover from the community assets are those for services rendered in the separation proceedings. The record before us does not show the amount of such fees. Perhaps we could assume that the $800 paid to defendant's first attorney, Kenneth Mayers, is the amount actually paid to him for services rendered to defendant in the separation suit. However, it would be unjust to award defendant his fee and not make an award to plaintiff for the services of her attorney rendered in the separation proceedings. Of course, we could remand the case for the establishment of the amounts of these fees for the attorneys for both plaintiff and defendant. However, neither party has requested a remand. It may be that the attorney's fee to which each is entitled is about the same, and the parties would not desire a remand with the consequent delay and expense. Accordingly, we will deny all attorneys fees *570 to both parties. If either party wishes a remand, he or she can ask for it in an application for rehearing.
Defendant's fifth contention is that he is entitled to a credit of one-half of the sum of approximately $2,200 which he paid on community debts to Sears-Roebuck, Montgomery-Wards and Foley's Department Store. The trial judge rejected this claim also for lack of sufficient proof. The trial judge is not clearly wrong in this finding of fact.
The sixth contention by defendant is that he is entitled to be reimbursed by the community the sum of $14,631.50 representing his separate and paraphernal funds in his bank accounts at the time of marriage and used during the existence of the community to purchase 500 shares of stock in Texaco, Inc. and 500 shares of Gulf Oil Company, Inc. The community still owned these stocks at the time of its dissolution and the judgment appealed orders the division of the stock and dividends one-half to each party. Although defendant argues in his brief that the district judge failed to rule on this claim, the minute entry containing the decision by the trial judge on the contested issues shows he states that based on his evaluation of the credibility of the witnesses and the evidence adduced, the claim (by defendant) for restitution of separate funds is denied. The rule is that where the husband claims restitution from the community of separate and paraphernal funds used to purchase community assets, the mere fact that the husband possessed the funds at the time of the marriage is not sufficient proof. In the similar case of Succession of Hotard, 248 So.2d 30 (La.App. 1st Cir. 1971) the husband testified he had $10,000 in bank accounts at the time of the marriage, but he produced no records to corroborate this testimony. The court held the husband's uncorroborated testimony as to the fact that he owned the funds at the time of the marriage and that he used the funds while still separate to purchase community assets, was not sufficient. See also Vicknair v. Vicknair, 284 So.2d 836 (La.App. 4th Cir. 1973), citing Roussel v. Lindsey, 262 So.2d 516 (La.App. 4th Cir. 1972). In the instant case, as in Vicknair, supra, the only evidence is the testimony of the husband that he had the separate funds and used them to buy the community stock. There is no other evidence as to the disposition of the funds. The trial judge states that based upon the credibility of the witness (defendant) and the lack of any other evidence, the right to this refund is not sufficiently proved. This factual finding by the trial judge is not clearly wrong.
The seventh contention by defendant is that he is entitled to one-half of the purchase price, $1,750, of a 1971 Ford Torino, which the wife retained after the dissolution of the community. Under the general rule, the defendant would be entitled to a credit against the community for one-half of the value of the automobile. However, the actual value of the vehicle is not proved. Moreover, the record shows that there was a dispute not only as to this automobile but as to several other items of movable property. The minute entry shows movable effects sold by both parties for the sum totaling $3,962.30 are to be divided equally between the parties, or $1,981.15 each, with Mrs. Miller owing Mr. Miller the additional sum of $813.20. The judgment appealed contains a similar provision. It is our understanding of the record that this compromise settlement as to the movable effects includes the automobile. There is nothing in the record to the contrary.
The eighth contention by defendant is that he is entitled to a credit against the community for one-half of the amount of the loss on 400 shares of W. T. Grant Company stock and 700 shares of Sterling-Homex stock purchased during the community. The loss on the W. T. Grant Company stock was $6,075.61 and on the Sterling-Homex stock $5,906.38, or a total loss of $11,981.99. Defendant argues that since the court allowed the community to retain the gains on other stocks, defendant should receive a credit for one-half of the loss on these two stocks. This argument is difficult to follow from an accounting and settlement standpoint. The W. T. Grant stock *571 and the Sterling-Homex stock were community property. After dissolution of the community, the stock was sold by Mr. Miller at a loss of approximately $10,000. This loss was suffered by the community, not by Mr. Miller's separate estate. Therefore, Mr. Miller's separate estate is not entitled to any credit from the community by virtue of the loss, as Mr. Miller individually lost nothing in the sale of the stock. Moreover, the minute entry showing the items as to which the parties agreed states in paragraph 4 that "stock in Sterling-Homes (sic) and W. T. Grant Company, which have both declared bankruptcy since the date of separation, are of no issue." (Emphasis supplied) The judgment does not mention thee two stocks. Thus, the trial judge apparently understood the parties had agreed there would be no issues arising out of these stocks. We think this is correct.
For the reasons assigned, the judgment appealed is amended so as to decree that Mr. Miller's account in the profit sharing plan of Gray Tool Company is a community asset and that plaintiff is entitled to one-half of the total sum, both contributions and earnings, in the account of defendant at the time of trial, the total in the account being proved to be $17,426.32, and plaintiff's one-half being $8,713.16. The judgment is further amended to decree that the awards of attorneys' fees in the amount of $5,000 to J. Minos Simon, Ltd., as attorney for Louella C. Miller, and $5,000 to William J. F. Gearheard, attorney for Virgle E. Miller, are reversed and set aside. Otherwise than as amended, the judgment appealed is affirmed. All costs of this appeal are divided equally between plaintiff and defendant.
AFFIRMED, AS AMENDED.