470 So.2d 162 (1985)
Janet Lynn RAMSTACK
v.
Kenneth W. KRIEGER.
No. CA-2765.
Court of Appeal of Louisiana, Fourth Circuit.
April 22, 1985.
Rehearing Denied May 29, 1985.
*164 Deonne Du Barry, Earl M.J. Boydell, Jr., New Orleans, for plaintiff-appellee Janet Lynn Ramstack.
Floyd J. Reed, Reed & Reed, New Orleans, for defendant-appellant Kenneth W. Krieger.
Before KLEES, LOBRANO and WILLIAMS, JJ.
KLEES, Judge.
Defendant appeals from a judgment partitioning the community property between him and the plaintiff, his former wife. The defendant contends that the trial judge made numerous errors which resulted in an inequitable and unlawful distribution of the community assets and liabilities. Our review of the record reveals that, although the lower court's judgment is correct in most respects, the trial judge did err in his treatment of certain retirement accounts owned by the defendant. Accordingly, for the reasons given below, we amend the judgment to correct this error and affirm it as amended.
The law provides that when spouses are unable to agree upon a partition of community property, the court shall divide the community assets and liabilities so that each spouse receives property of an equal net value. LSA-R.S. 9:2801. The statute further provides:
(c) In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct....
The trial court is obligated to follow the dictates of R.S. 9:2801 in effecting the partition. On appeal, we may not disturb the trial court's judgment in the absence of manifest error. Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973).
Defendant's major objection to the partition concerns the allocation of the community home to the plaintiff rather than to himself. Defendant contends that this allocation is improper because he was living in the home at the time of the trial, whereas the plaintiff was living in Kentucky. However, the plaintiff testified that she had moved to Kentucky in order to accept a one-semester job at a university there and that she intended to return to Louisiana to reside as soon as her job ended. In view of this testimony, we cannot say that the trial court's decision to award the house to the plaintiff was manifestly erroneous.
The defendant also complains that the trial judge should have set the value of the house at $58,000, rather than $60,000, to conform with the testimony of the defendant's appraiser, the only expert to testify on value. This contention ignores the fact that the plaintiff, on her descriptive list, set the value of the house at $80,000 and requested an independent appraisal to clear up this discrepancy. Although the trial judge refused this request, it was reasonable for him to consider both parties' estimates of value in arriving at a compromise figure, i.e., $60,000. In any case, this value is not so out of line with the appraisal as to constitute manifest error.
Defendant next complains that the trial court improperly included as community assets certain funds he withdrew from three joint savings accounts just prior to separating from the plaintiff. Although defendant claims that he used these funds to pay community bills, including his own attorney's fees, he admitted that he initially withdrew them to prevent his wife from depleting the community accounts. However, the only evidence of the plaintiff having *165 taken any funds was a $3,000 withdrawal which she testified she made to replace $3,000 of her fellowship money (separate property) that had been used for a community purpose. As for the defendant's claim that he used the funds to pay his attorney's fees, the law is that attorney's fees are not community debts when they are incurred after the dissolution of the community by legal separation or divorce and are payment for services in a contested partition proceeding. LSA-C. C.P. art. 4613; Miller v. Miller, 405 So.2d 564, 569 (La.App. 3rd Cir.1981); Lane v. Lane, 375 So.2d 660, 679-680 (La.App. 4th Cir.1978), writ den. 381 So.2d 1222 (La. 1980). Defendant herein did not prove that the attorney's fees in question related to the parties' legal separation in March of 1983 rather than to the partition proceeding. Moreover, as there were no corresponding attorney's fees claimed by the plaintiff, the court could properly deny attorney's fees to both parties. See Miller, supra, at 569-570. Under the circumstances, it was not error for the trial court to include the savings accounts as community property.
Another objection of the defendant to the partition concerns the trial court's failure to include as a community liability $22,500 that defendant claims he owes to his first wife for the support of the children of his first marriage. Although it is true that a spouse's judicially-ordered support payments for the children of a former marriage are a community obligation (See LSA-C.C. art. 2362), the defendant admitted that he never made any payments to his first wife. Instead, he introduced at trial a written contract whereby he and his first wife agreed that in lieu of paying the court-ordered sum ($150.00 per month), the defendant would hold the funds and use them for the children's college educations. However, the defendant did not maintain a separate account containing these funds; rather, he claims that he intended the equity in the house he purchased with the plaintiff, his second wife, to serve as his children's college fund.
Under these circumstances, we believe the trial judge was correct in refusing to allocate a portion of the house's value to fulfill defendant's child support obligation. Defendant relies heavily upon Connell v. Connell, 331 So.2d 4 (La.1976); however, the language of that case actually does not support defendant's position. In Connell, the Supreme Court stated:
Thus, the support payments are for an obligation of the husband, imposed by law (not by contract nor by alimony judgment recognizing it and fixing its amount) and which month by month arises during the second community. Therefore, they are properly dischargeable from common funds, Civil Code Article 2403, without any necessity for the husband to account to his second wife from his share of the community assets, after dissolution of the second community for such payments made from community funds.

331 So.2d at 6 (Emphasis added). In the instant case, defendant did not make any monthly child support payments during the existence of the second community. Rather, he entered into an agreement which converted his legal obligation of child support into a contractual obligation to his first wife to pay for the children's college educations. Because plaintiff knew nothing of this agreement, she should not be bound by it. Monk v. Monk, 376 So.2d 552 (La.App. 3rd Cir.1979), also relied upon by defendant, merely states that it is permissible for a former wife to enter into an agreement authorizing her husband to make child support payments in some manner other than directly to her; it does not state, however, that such a contract can affect third parties, such as a second wife. Therefore, even assuming defendant's testimony (that he intended the equity in the home to serve as his children's college fund) to be credible, the law would not permit him to receive a credit from the second community for $22,500 worth of monthly child support payments he never actually made.
*166 The remainder of defendant's objections, except those regarding his retirement accounts, are meritless. Since most depend upon assessments of credibility which are properly left to the trial court, they warrant no discussion here. For the record, we do note that the trial court committed an error by listing a $70.00 community telephone bill as having been paid by the plaintiff, even though both parties testified that it was paid by the defendant. Nevertheless, correction of this error does not affect the judgment of partition because the bill was counted as a community liability to be shared equally between the parties.
Turning to the retirement accounts, we do find that the trial court erred in its treatment of defendant's Louisiana State Employee's Retirement System account and his TIAA account (a retirement account established when defendant was employed by the University of Iowa). The trial court treated both accounts as community property and gave plaintiff credit for one-half the amount currently in each account. The defendant claims that the plaintiff's interest in these accounts, if any, is executory and becomes reduceable to possession only when he actually retires, an event which has not yet occurred. Furthermore, citing Roberts v. Roberts, 325 So.2d 674 (La.App. 2d Cir.1976), the defendant contends that the Louisiana retirement account has been judicially declared to be separate property. See: also: Kennedy v. Kennedy, 391 So.2d 1193 (La.App. 4th Cir. 1980).
Defendant's reliance on the Roberts case is misplaced. Recently, in Walker v. Walker, 463 So.2d 912 (La.App. 2d Cir.1985), the Second Circuit overruled Roberts and held that a spouse's interest in a statutorily created state retirement system is community property. Moreover, in McCoy v. McCoy, 460 So.2d 641 (La.App. 4th Cir. 1984), this court declared that a spouse's interest in the Louisiana State Employee's Retirement System is community property, overruling Kennedy, supra. 460 So.2d at 644-45. We also held in McCoy that the extent of the non-employed spouse's interest must be determined according to the formula set forth by the Supreme Court in Sims v. Sims, 358 So.2d 919 (La. 1978). Under Sims, the non-employed spouse gets no credit until the other spouse actually retires, at which point the non-employed spouse is entitled to a certain percentage, determined by the formula, of every pension check thereafter received by the retired spouse. The Sims formula is calculated as follows:
 Portion of pension
 attributable to
 creditable service during
 existence of community
-------------------------- × ½ × annuity (or lump-sum
 Pension attributable to payment)
 total creditable service
358 So.2d at 924.
In this case, as in Sims, because the defendant has not yet retired, the denominator of the fraction cannot yet be determined. Therefore, as was held in Sims, the plaintiff herein is entitled to a judgment recognizing and declaring her interest in any pension, annuities, lump-sum payments or other benefits defendant hereafter receives from the Louisiana State Employee's Retirement System. Furthermore, because the TIAA account, from the state of Iowa, is similar to the Louisiana retirement account in that defendant cannot receive any benefits until he actually retires, we think it should be treated in the same way, entitling plaintiff to a declaration of her future interest, the extent of which must be determined according to the Sims formula.
Defendant also objects to the lower court's treatment of his third retirement account, which is a Kemper account. A Kemper account is essentially the same *167 as an IRA, or Individual Retirement Account, in that defendant may withdraw the funds at any time; however, if he withdraws them before he reaches a certain age, he will incur a federal income tax penalty. Defendant claims that rather than allocating to him the entire sum in the account as community property, the trial court should have deducted an amount equal to the income tax penalty he would have to pay if he withdrew the funds now. We disagree with this argument. We think the trial court was correct in treating the Kemper account as a present asset because, unlike the other two retirement accounts, the money in the Kemper account can be withdrawn at any time and therefore is reduceable to possession. Furthermore, we do not believe that defendant is entitled to a credit for the income tax penalty that he will incur if he withdraws the funds. Defendant has the option of withdrawing the funds now or of leaving them in the account for any length of time he chooses. While it is true that if he withdraws the money before a certain age, he will incur a tax liability which the plaintiff will not be required to share, it is also true that if he leaves the funds in the account, they will earn interest from which the plaintiff will not benefit. Therefore, we find the trial court's treatment of the account to be an equitable solution.
Accordingly, we amend the judgment to remove the Louisiana State Employee's Retirement System account and the TIAA account from the list of presently allocated community property, and to recognize and declare plaintiff's interest in these accounts, the extent of which is to be determined according to the Sims formula, at the time defendant becomes entitled to receive benefits from said accounts. The result of this amendment is to alter the trial court's figures (See appendix) as follows: (1) The community assets allocated to defendant total $24,080.00, rather than $30,580.00 (after eliminating the $3,500.00 TIAA account and the $3,000.00 Louisiana retirement account); (2) The net difference between the assets and liabilities allocated to defendant is $11,707.17, rather than $18,207.17; (3) The cash payment owed by plaintiff to defendant is $4,747.51, rather than $1,497.50. Therefore, the judgment of the trial court is amended to require plaintiff, Janet Lynn Ramstack, to deliver to defendant, Kenneth W. Krieger, within 30 days from this date, the cash sum of $4,747.51. The judgment is affirmed in all other respects, with costs to be borne equally by both parties.
AMENDED IN PART.
AFFIRMED IN PART.
WILLIAMS, J., concurs.
WILLIAMS, Judge, concurring.
I respectfully concur.
I agree that the debt representing child support payments owed by defendant to his first wife do not necessarily have to be satisfied from a specific source: the equity he has established in his home. I do believe, however, that absent a court order modifying the original child support decree, the second community would be liable for any payments that accrued during its existence.