774 So.2d 1067 (2000)
Arnece BUTLER, Plaintiff-Appellant,
v.
DOUG'S IGA, t/a Big Star of Tallulah & Colony Insurance Company, Defendants-Appellees.
No. 34,232-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 2000.
*1068 Samuel Thomas, Tallulah, Counsel for Appellant.
Davenport, Files & Kelly, L.L.P. by Carey B. Underwood, Monroe, Counsel for Appellees.
Before NORRIS, BROWN & PEATROSS, JJ.
PEATROSS, J.
This action arose out of an alleged trip and fall by Plaintiff, Arnece Butler, in Doug's IGA grocery store in Tallulah, Louisiana. Ms. Butler sued Doug's IGA and its insurer, Western Heritage Insurance Company ("Western Heritage"), for damages. After a bench trial, the trial court found no negligence on the part of Doug's IGA and dismissed Ms. Butler's suit. Ms. Butler appeals. For the reasons stated herein, the judgment of the trial court is affirmed.

FACTS
On January 12, 1998, at approximately 6:30 p.m., Ms. Butler was shopping at Doug's IGA in Tallulah, Louisiana. As Ms. Butler rounded the corner of the household products aisle, she allegedly tripped and fell, sustaining injuries to her neck, back, leg, thigh and elbow. Ms. Butler presents somewhat differing versions of how the alleged trip and fall occurred. In her petition, she states that, unbeknownst to her, crates were stacked at the end of the aisle which caused her to stumble and fall. The petition continues to allege negligence on the part of Doug's IGA in "failing to keep its floors free from foreign and hazardous substances, i.e., water,...." (Emphasis ours.) Ms. Butler later testified at trial that, as she came off of one aisle and started to go down another, "my foot got caught on something plastic or something ... and I fell. My feet got caught and I tripped over a pallet." Ms. Butler continued in her testimony to describe the "crate" as a wooden pallet like those lifted by a forklift and further testified that there was nothing stacked on the pallet at the time she tripped over it. On cross-examination, Ms. Butler testified that the plastic must have been attached to the pallet and that, even after she fell, the plastic was still on her feet. Moreover, she claims that, when the paramedics got her up off of the floor, the plastic was still lying by her feet. Later in her testimony, she admits that she never actually saw the plastic on her feet, but stated "I felt it, it was like plastic."
*1069 Ms. Butler claims that this pallet was used to display paper towels that were on sale; and, apparently, they sold well and the pallet was empty. She further claims that the night manager knew of the empty pallet and did nothing to eliminate the danger. Ms. Butler admitted in her testimony that she did not know how the plastic or pallet got there or how long they had been there. Additionally, Ms. Butler was adamant in her testimony that it was not the endcap placed at the end of the aisle which caused her to fall, but this wooden pallet with no items stacked on it.[1] Ms. Butler also testified that she shops frequently in Doug's IGA. In any event, the alleged fall was reported to the manager and Ms. Butler was taken via ambulance to the hospital.
Doug Curtis, the owner of Doug's IGA, testified that endcaps such as the one that was placed at the end of the aisle where Ms. Butler fell are semi-permanent displays, which he has used in the IGA for years. He described the endcap as a 4' × 4' platform which is 12" high and is commonly used in the grocery industry. According to Mr. Curtis, this particular endcap had been in place since 1994 and was being used to display sugar at the time of this incident. He further testified that the endcap displays are in line with the shelves on the aisle and do not protrude into the walkway. Over 600,000 patrons visit this IGA each year and this is the first incident that has ever been reported involving this type of display at Mr. Curtis' store.
Edward Honeycutt, the security guard on duty at Doug's IGA when Ms. Butler allegedly fell, also testified at trial. Officer Honeycutt saw Ms. Butler lying on the floor after the fall, but did not see anything on the floor which could have caused the fall. He did not see any plastic on the floor, nor did he see a forklift pallet at the end of the aisle. Officer Honeycutt did testify that the display platform located at the end of aisle where Ms. Butler allegedly fell was empty and had been empty for about an hour. He further testified that Ms. Butler was lying close to the endcap. Finally, Officer Honeycutt testified that he investigated the incident, but found no witnesses.
Additionally, Jimmy Wilkins, an employee of Doug's IGA who was working the evening of the incident, took photographs of the area where Ms. Butler allegedly fell. Mr. Wilkins testified that he saw no plastic or wooden forklift crate on the floor or anything else which might have caused Ms. Butler to fall. Mr. Wilkins also testified that the endcap platform was partially empty because the sugar that was displayed there was selling well that day; however, he was unaware at the time of the incident that the display was empty. Regarding the fact that the display was partially empty, Mr. Curtis testified that the display would have been restocked when the truck arrived the following morning and that it is impossible to keep them fully stocked at all times.

DISCUSSION
In slip (or trip) and fall cases, a plaintiff's burden of proof is governed by La. R.S. 9:2800.6, which provides, in pertinent part, as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a *1070 condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
The supreme court's leading interpretation of La. R.S. 9:2800.6 is White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081. In White, the court emphasized that, in addition to proving all other elements of the cause of action, the claimant must prove each of the enumerated requirements of 9:2800.6(B). In order for Ms. Butler to recover in the present case, therefore, she had to establish that: (1) a condition presenting an unreasonable risk of harm existed and that risk of harm was reasonably foreseeable; (2) prior to the occurrence, Doug's IGA either created, had actual knowledge or constructive knowledge of the condition which caused the damage; and (3) Doug's IGA failed to exercise reasonable care.
The trial court's factual findings are accorded great weight and may not be disturbed by a reviewing court in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Rodgers v. Brookshire Grocery Company, 29,920 (La. App.2d Cir.10/29/97), 702 So.2d 11. To reverse a trial court's factual determinations, a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong or manifestly erroneous. Thompson v. Coates, 29,333 (La.App.2d Cir.5/7/97), 694 So.2d 599, writs denied, 97-1442 (La.9/26/97), 701 So.2d 985 and 97-1521 (La.9/26/97), 701 So.2d 987. If the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, supra.
It is the factfinder's duty to weigh credibility and to accept or reject all or part of a witness's testimony. Where there is a conflict in the testimony, reasonable evaluations of credibility should not be disturbed on appeal. Rosell, supra. Where there are two permissible views of the evidence, the factfinder's choice cannot be manifestly erroneous or clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993). Appellate courts must constantly have in mind that their initial review function is not to decide factual issues de novo. Rosell, supra.
As previously stated, the trial court found in favor of Doug's IGA and Western Heritage and dismissed Ms. Butler's suit. In oral reasons for judgment, the trial court noted the heavy burden on plaintiffs in such cases since White v. Wal-Mart, supra. In finding that Ms. Butler failed to meet her burden of proof under La. R.S. 9:2800.6, the trial court concluded the following: (1) the merchant did have notice of the condition (Mr. Curtis had the display built and intentionally placed it there); however, (2) the display did not present an unreasonable risk of harm (display had been in place four years; more than 600,000 customers per year and no previous accidents; customary type display used in industry); and (3) the merchant did not fail to exercise reasonable care (this was an obvious condition that should have been observed by anyone who was paying attention and was not distracted). We find no manifest error in the trial court's conclusions.
*1071 First, we note that, clearly, Doug's IGA had knowledge of the existence of the endcap display.[2] Second, however, we also find more than adequate support in the record for the trial court's conclusion that the endcap did not constitute an unreasonably dangerous condition. The testimony of Doug Curtis, as outlined above, clearly supports this conclusion. Ms. Butler argues, however, that it was not the endcap over which she fell, but, rather, some plastic that was somehow attached to the pallet which protruded into the walkway. The only testimony in the record supporting the existence of such plastic and/or pallet is Ms. Butler's own self-serving testimony. The trial court obviously believed the testimony of Officer Honeycutt and Mr. Wilkins, that there was no such pallet/plastic in the vicinity of Ms. Butler's alleged fall, to be more credible. We will not disturb such a credibility call on the part of the trial court. Third, the trial court specifically found that Doug's IGA did not fail to exercise reasonable care. Again, we find no manifest error in this conclusion. As noted by the trial court, the endcap display at the end of the aisle was an obvious condition which should have been observed by a patron using reasonable care. In fact, the record reveals that there was the same or similar type display at the end of almost every aisle in the grocery store. Moreover, this particular display had been in place for more than four years at the time of Ms. Butler's alleged fall and she testified that she shopped at Doug's IGA frequently.
In summary, a review of the entire record in this case reveals a reasonable factual basis for the trial court's findings. The trial court heard the testimony and weighed the credibility of the witnesses. Faced with differing views of the evidence, the trial court drew the appropriate factual conclusions. These conclusions are well supported by the record and will not be disturbed on appeal.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to Plaintiff/Appellant, Arnece Butler.
AFFIRMED.
NOTES
[1] There is no dispute that there was a display platform, or endcap, in place at the end of the aisle, close to where Ms. Butler allegedly fell. Also, there does not seem to be much dispute that the display was partially empty or empty at the time of the incident. Apparently, there were similar endcaps at the end of virtually every aisle in the store.
[2] The fact that the endcap may have been partially or completely empty at the time of Ms. Butler's alleged fall is immaterial in our opinion. If, in fact, Ms. Butler did trip over the display platform, the fact that it was not full of the sugar which it was intended to display would not have contributed to her accident.