806 So.2d 981 (2002)
Lenner NEWMAN, Jr., Plaintiff-Appellant,
v.
Margaret Ann Jackson NEWMAN, Defendant-Appellee.
No. 35,568-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2002.
*982 Ronald P. Camp, West Monroe, Counsel for Appellant.
James Norwood, West Monroe, Counsel for Appellee.
Before NORRIS, WILLIAMS and DREW, JJ.
WILLIAMS, J.
In this suit for partition of community property, the plaintiff, Lenner Newman, Jr., appeals a district court's judgment awarding the family home to the defendant, Margaret Ann Jackson Newman, and ordering the defendant to make an equalizing payment to the plaintiff. For the following reasons, we affirm.

FACTS
Lenner Newman, Jr. and Margaret Ann Jackson Newman were married on June 28, 1964. Mr. Newman filed a Petition for Divorce on August 21, 1998 and the parties were divorced on May 5, 1999. At that time, the court ordered a dissolution of the marital community. Both parties desired to be awarded the community home. After efforts to voluntarily settle the division of property were unsuccessful, the parties stipulated to the appointment of an attorney as an expert, to assist the court in the settlement of the community. The expert examined the community and filed a comprehensive report on August 14, 2000, valuing the community at $376,600.13. This amount represented the total assets of the community, as there were no liabilities. The expert's report also included a recommendation that the family home be awarded to Mr. Newman.
Both parties testified during the trial. Mr. Newman testified that he was actively involved in the design and maintenance of the home. He also testified that Mrs. Newman had left the home on several occasions and that the absences were a factor in his decision to file for divorce. However, on cross-examination, Mr. Newman admitted that both he and Mrs. Newman had contributed to the maintenance of the home and that during her absences she was in frequent contact with him. He also admitted that he told some friends that he suspected Mrs. Newman of adultery. He testified that he regrets his accusations against his wife. Mr. Newman did not call any witnesses.
Mrs. Newman testified that she was actively involved in the maintenance of the home. As an example, she stated that she contributed entire paychecks so that they could expedite paying off the mortgage on the home. She also testified that Mr. Newman had chosen to end the marriage, despite her desire to reconcile. Mrs. Newman stated that her absences from the home were a result of Mr. Newman's "mood swings," which caused her considerable stress. She further stated that she was under the care of a physician to address the physical manifestations of the stress. The court noted that Mrs. Newman's physician had begun to suspect that she was going through menopause, which triggered the various symptoms, including depression, nausea and crying. Additionally, Mrs. Newman called several witnesses in support of her request to have the home awarded to her by the court. These witnesses testified about Mrs. Newman's desire to preserve the marriage and the underlying reasons for her absences from the home. They also corroborated her testimony with regard to the false accusations of adultery by Mr. Newman. Mrs. Newman stated that she wanted to be awarded the family home so that she could "make it a happy home."
After testimony and oral argument, the court took the matter under advisement. *983 The court filed written reasons for judgment on December 12, 2000, awarding the family home to Mrs. Newman, despite its finding that there was significant inconvenience and added expense occasioned by its proposed allocation of assets. The court rendered its final judgment on March 12, 2001, which, in accordance with the above-mentioned reasons for judgment, awarded the family home to Mrs. Newman. The value of the family home was listed as $93,850. Because Mrs. Newman's total award created a surplus in her favor, the court further ordered her to make an equalizing payment to Mr. Newman in the amount of $86,887.95, payable within ninety days of the judgment. An addendum to the judgment, filed on March 29, 2001, provided that in the event Mrs. Newman failed to provide the lump sum payment within ninety days of the original judgment, she must execute a promissory note and mortgage in satisfaction of the payment to Mr. Newman, payable over a period of ten years. Mr. Newman appeals the judgment of the trial court.

DISCUSSION
Mr. Newman contends the trial court abused its discretion in awarding the family home to Mrs. Newman. He contends: (1) the trial court disregarded the court-appointed expert's recommendation that the home be awarded to him; (2) the court allowed alleged accusations of adultery made by Mr. Newman against Mrs. Newman to create a "red herring" for the court that distracted it away from the issue of equal partition of community assets; and (3) the trial court did not consider Mrs. Newman's absences from the home in its decision to award her the home.
An appellate court may not set aside a trial court's factual findings absent manifest error or unless clearly wrong. Butler v. Doug's IGA, 34,232 (La.App.2d Cir.12/6/00), 774 So.2d 1067. In the partition of community property, the trial court is granted broad discretion in assigning assets and liabilities and is required to consider: (1) the source and nature of each asset or liability; (2) the financial situation of the other spouse; and (3) any other relevant circumstances. LSA R.S. 9:2801 et seq.; Gay v. Gay, 31,974 (La.App.2d Cir.6/16/99), 741 So.2d 149.
Given this broad discretion, the court is required to partition the community assets so that each spouse receives property of an equal net value. In order to avoid an unequal net distribution of assets, the court may order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon specified terms and conditions; and the court may order the execution of notes, mortgages or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property as security. LSA-R.S. 9:2801 et seq; Kambur v. Kambur, 94,775 (La.App. 5th Cir.3/1/95), 652 So.2d 99.
In the present case, the parties stipulated to the appointment of an expert to examine and value the community. The appointment was made and the expert carried out his duties. Mr. Newman contends the court did not follow the expert's recommendation to award the house to him. After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. Verret v. Verret, 34,982 (La.App.2d Cir.5/9/01), 786 So.2d 944; Curtis v. Curtis, 34,317 (La.App.2d Cir.11/1/00), 773 So.2d 185; Warlick v. Warlick, 27,389 (La. App.2d Cir.9/29/95), 661 So.2d 706.
The record reflects that the recommendation was made by the expert largely because Mrs. Newman had more retirement, savings, and IRA funds and it was *984 the expert's opinion that it would not be wise for her to cash in those accounts so that she could make the equalizing payments. Obviously, the court ordered the expert's report in order to simplify and expedite the partition of the community property regime, and to educate the court on the type and amount of property involved. However, the court was not bound by the expert's recommendation and had the discretion to make its own determination. Gay, supra.
In its "Written Reasons for Judgment," the court notes that it used "intangible factors" in its determination of the partition of the community. To that end, the court allowed testimony from both parties with regard to Mr. Newman's allegations of adultery against Mrs. Newman. The court concluded that it found no basis for the allegations of adultery. The court also concluded that the repeated accusations by Mr. Newman, coupled with the court's belief that Mrs. Newman was suffering from a menopausal condition and depression, were motivating factors in Mrs. Newman's absences from the family home. It appears the trial court considered these factors as some of its intangible factors. Additionally, the trial court, in its reasons for judgment, cited Ramstack v. Krieger, 470 So.2d 162 (La.App. 4th Cir. 1985) as authority for its decision on the specific allegations in this case. In Ramstack, the trial court held, and the fourth circuit affirmed, that although the wife moved out of the house, it was for a limited time, and it was her intention to return to Louisiana. The facts of Ramstack are similar to the facts of the present case with regard to Mrs. Newman's absence from the family home. Since Mr. Newman presented evidence of Mrs. Newman's absences from the family home in support of his argument that he should be awarded the family home, then the trial court correctly evaluated the reasons for Mrs. Newman's absences. LSA R.S. 9:2801 allows the trial court to use any "relevant circumstances" in partitioning community assets. Mr. Newman initially presented the issue of adultery and Mrs. Newman's testimony was in response to his allegation. These are relevant factors in determining which of the parties should acquire the ownership of the home. We find no abuse of discretion in the trial court's findings.
The trial court applied the three-part criteria in LSA R.S. 9:2801 to determine the partition of the community assets. We find no manifest error or abuse of the trial court's broad discretion in awarding the family home to Mrs. Newman, with a balancing payment to Mr. Newman.

CONCLUSION
For the above reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Lenner Newman, Jr.
AFFIRMED.