635 So.2d 747 (1994)
Frances Lambert MECHANA
v.
Charles Alfred LAMBERT.
No. CA 93 1204.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Roy H. Maughan, Jr., Baton Rouge, for plaintiff-appellee Frances Lambert Mechana.
F. Charles Marionneaux, Plaquemine, Amy Dauzat Marionneaux, Baton Rouge, for defendant-appellant Charles Alfred Lambert.
Before EDWARDS, CARTER and CRAIN, JJ.
EDWARDS, Judge.
Plaintiff, Frances Lambert Mechana, filed a petition to partition the pension plan of her *748 ex-husband, Charles Alfred Lambert. Two main issues were presented to the trial court: (1) Should the community be given credit for Mr. Lambert's post community termination promotion and subsequent pay raises? and (2) Should the community be given credit for a post termination enhanced benefit package given to Mr. Lambert to induce him to accept early retirement?
The trial court relied on Hare v. Hodgins, 586 So.2d 118 (La.1991), and found that Mr. Lambert had not met his burden to show that the promotion and attendant raises and the enhanced benefits were the product of extraordinary personal effort or achievement after divorce. A judgment was rendered awarding Ms. Mechana 31.77215% of the pension benefits received by Mr. Lambert between November 1, 1985, and January 1, 1993, and the same percentage of all future benefits.
We affirm the finding that the post termination promotion and pay raises can be ascribed partly to past community effort. We do not agree that the enhanced benefits can be attributed to any community effort and reverse the trial court's holding that Ms. Mechana is entitled to a percentage of the enhanced portion of the monthly benefit payment. We remand to the trial court for amendment of the Qualified Domestic Relations Order (QDRO) consistent with this opinion.

FACTS AND PROCEDURAL BACKGROUND
Mr. Lambert and Ms. Mechana were married on September 27, 1952, and divorced on November 2, 1973. The community between the parties was terminated on October 23, 1973. Southern Natural Gas Company, a subsidiary of SONAT, Inc. (SONAT), hired Mr. Lambert on November 29, 1952. On that same day, he became a participant in the SONAT retirement plan. In November of 1975, Mr. Lambert was promoted from senior measurement technician to the supervisory position of measurement division superintendent.
Mr. Lambert retired on November 1, 1985, before his normal retirement date under the SONAT plan of July 1, 1994. The pension plan was not partitioned at the time of the divorce. Ms. Mechana filed a petition to have the pension plan partitioned on October 19, 1990, and a hearing was held on September 8, 1992, before Judge Catherine D. Kimball. Judge Thomas Tanner, sitting in place of Judge Kimball, who had been elected to the Louisiana Supreme Court, rendered judgment on the issues and a QDRO that was filed in the record on March 26, 1993. Mr. Lambert appealed.
Because of a need to downsize employment and control payroll costs in 1985, SONAT offered eligible employees a special early retirement option incentive package (SERO). The SERO package was composed of (1) a special supplement that would raise the monthly retirement benefits under the regular SONAT early retirement plan in effect at the time by $725.86 and (2) a supplement, termed a social security equivalent, of $732.10 to bridge the period between early retirement, before Mr. Lambert would be eligible for social security payments, and the normal retirement date. The social security supplement would terminate when Mr. Lambert became eligible for social security payments. The incentives included in the SERO package increased by $1457.96 the defined benefit of $1096.05 Mr. Lambert would have received on early retirement before the SERO offer. Thus, if Mr. Lambert accepted the offer, the total monthly benefit would be $2554.01.
To be eligible for the SERO package, an employee had to be 55 years old and have five years with the company. The election by an employee to take advantage of the SERO package had to be made by October 1, 1985. SONAT made no guarantee that the SERO package would be extended or offered again.

LAW APPLICABLE TO CLASSIFICATION OF PENSION BENEFITS
The Louisiana Supreme Court in Hare reviewed the traditional concepts used in classifying pension plans as community property and recognized the need for periodic departures from the formula outlined in Sims v. *749 Sims, 358 So.2d 919 (La.1978). Additionally, the supreme court provided the following guidelines for use by the trial court in making determinations in complex factual cases and in the constantly changing world of retirement law:
1. Classifying Pension Rights As Community or Separate Property
Before an asset can be classified as community or separate, it must first be identified as "property." K. Spaht and L. Hargrave, Matrimonial Regimes, 16 Civil Law Treatise § 2.1 (1989 & Supp. 1991) [hereinafter "Spaht & Hargrave"]. This court decided in T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La. 1976) that an employee's contractual pension right is not a gratuity but a property interest earned by him.
To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La.Civ. Code art. 2338; Sims v. Sims, 358 So.2d 919 (La.1978); T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834 (La.1976). Consequently, when the community is terminated, the employee's spouse is entitled to be recognized as the owner of one-half of the value attributable to the pension or deferred compensation right earned during the existence of the community. La.Civ.Code art. 2336; La.R.S. 9:2801 (1991); Sims, supra at 923-24; T.L. James & Co., supra. Correlatively, if part of the employee's pension right was earned before or after the existence of the community, that part of the pension right must be classified as the employee's separate property (or as property of a different marital regime) and separated from the community property interest to be divided. La.R.S. 9:2801 (1991); T.L. James & Co., Inc. v. Montgomery, supra.
As a general principle, a court partitioning a community asset is required to classify the property for this purpose as of the date of the termination of the community. La.Civ.Code arts. 2338-2341; La.R.S. 9:2801 (1991); K. Spaht & L. Hargrave, supra, §§ 7.25, 7.26. In the case of a pension right earned partly during and partly not during the community, however, the process of classification begins at the termination of the community and continues until a partition of that asset is effected. Because the community interest in the pension right is an incorporeal that may accrue or appreciate over time, or fluctuate in proportion to the employee spouse's separate property interest in the pension, the community and separate fractions of the pension cannot be separated and classified definitively until the partition.
. . . . .
Neither the Civil Code nor La.R.S. 9:2801 contains anything that requires courts to follow the fixed percentage method to the exclusion of others. In fact, La.R.S. 9:2801, which was enacted subsequent to Sims affords the partitioning tribunal a great deal of flexibility and clearly implies that the goals of equality and equity require that no one method should be used to the exclusion of other apportionment techniques. Moreover, our study of legal developments both here and in other jurisdictions convinces us that because of the great variations in pension plans and communal situations no one method can accomplish justice in every case. It is essential, therefore, that courts be able to take advantage of reasonable alternatives and adjustments in order to accomplish an equal distribution in an equitable manner in all situations.
. . . . .
In theory an employee's acquisition of a pension right in the early years of employment during marriage, even though based on a smaller salary, may be actually worth more than his enhancement of that right during the post-divorce years, due to the longer period of accumulated interest and investment income prior to the commencement of benefit payments. Another rationale is that the services rendered by the nonemployee spouse to the community during the early, low paid years of the employee spouse's employment provide the foundation for the post-divorce escalation *750 of pension benefits and thereby usually justify applying the community fraction to the entire pension benefit including any increases after divorce. In other words, a brick at the bottom of a wall may be more important to its stability than quite a few near the top.
Nevertheless, there will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings. In such cases, the partitioning court should select a more equitable method or modify the community or marital fraction rule to attribute that part of the post-divorce increase to the employee spouse separately. Although the emerging jurisprudential precepts are not yet well defined, some factors may be identified as helpful guidelines in determining when such a modification is required.
In general, the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. For example, such an increase in benefits might occur where the employee spouse attains a significantly higher-paying position while remaining within the coverage of the same pension plan, either through earning a post-community degree, or transfer within the company to an unrelated area of service. Such increases are not "acquired during the existence of the legal regime through the effort, skill, or industry of either spouse" are not fairly ascribable to the community and should not be considered community property. La.Civ.Code art. 2338. On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain. See La.Civ.Code art. 2340. Drawing the line in this manner is consistent with the codal scheme for classification of property as community or separate, is fair, and is consistent with the reasonable expectations of the parties. The employee spouse should expect to profit individually from his extraordinary personal industry after divorce, and the non-employee spouse is entitled to expect to share in the benefits earned by his or her investment in the community.
When an employee spouse believes that the income he or she will receive on retirement contains a substantial increment ascribable to his or her personal effort or achievement after termination of the community, that spouse may request the court to adjust the community fraction to credit his or her separate property with that increment. Should the trial court agree that the pension was increased due to the employee spouse's personal effort or achievement, benefits may then be reallocated using the highest income the employee spouse would have received under the normal course of events, including ordinary promotions and cost increases and gains due to non-personal factors. Because the employee spouse is generally in a position of superior knowledge and is attempting to prove the unusual or unlikely case, the burden of going forward with evidence and of persuasion on this issue properly should be assigned to the employee spouse.
Thus, for the courts the process may be viewed as a winnowing of increments of post-community increases in the employee spouse's earnings for the purpose of determining whether the increases are due purely to personal merit. First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements. Moreover, since the employee spouse has the burden *751 of production of the evidence and persuasion, cases of doubt should be resolved in favor of the community and against the employee's spouse's separate estate or subsequent marital community.
Hare, 586 So.2d at 122-28 (some citations omitted; citations standardized).

APPLICATION OF LAW TO FACTS
By applying the guidelines to the case before us, we are able to answer the questions posed by the appeal.
Should the community be given credit for the post termination promotion and raises? Yes, the increase in the monthly benefit caused by the increase in pay is attributable in part to past community effort and achievement. Mr. Lambert admitted that the promotion was based partly on the years of good service and effort rendered by Mr. Lambert during the existence of the community. The subsequent pay raises were not shown to be the result of extraordinary personal effort or achievement by Mr. Lambert unrelated to the past effort ascribable to the community or past compensation. The raises were the kind anticipated with a promotion and the result of continued good service by Mr. Lambert.
After a thorough review of the record, we agree with the trial court that Mr. Lambert did not meet his burden of proof and show that the promotion and the attendant raises were extraordinary or due purely to his personal effort or skill after the termination and unrelated to the prior community earnings or effort. Thus, the increases in benefits that resulted from the higher pay are ascribable to the community, and the trial court was correct in including those increases in the total monthly benefit on which Ms. Mechana's fractional share was calculated.
Should the community be given credit for the SERO incentive offered to Mr. Lambert to induce him to elect early retirement? No, the SERO incentives were not "`acquired during the existence of the legal regime through the effort, skill, or industry of either spouse'" and "are not fairly ascribable to the community." Hare, 586 So.2d at 128. The enhancements under the SERO package were earned after the termination of the community and are the employee's separate property. See LaBuda v. LaBuda, 349 Pa.Super. 524, 503 A.2d 971, 975-76 (1986), appeal denied, 514 Pa. 648, 524 A.2d 494 (1987); Biddlecom v. Biddlecom, 113 A.D.2d 66, 495 N.Y.S.2d 301, 303 (A.D. 4 Dept.1985) (although these cases arose in equitable distribution states and the facts in Biddlecom are somewhat different, the classification reasoning is consistent with our own in this case).
Mr. Lambert met his burden to show that the SERO benefits were earned after the existence of the community. The higher benefit possible under the SERO package offset the loss of income resulting from the election of the regular early retirement plan. Although the SERO package is paid in one lump sum by SONAT, the SERO benefits are not paid in lieu of deferred compensation owed during the community, but rather in lieu of future compensation lost by the election of early retirement. In exchange for the SERO package, Mr. Lambert eliminated the possibility that his job would be declared redundant or re-structured and agreed to forego continued job benefits and compensation, which would have been classified as separate property.
The retirement plan in effect at the time of the divorce and termination of the community listed an early retirement option, but did not include the SERO package. These were not benefits offered to all employees in the plan at that time and in the future. Neither were these enhancements the result of ordinary non-personal factors, such as cost of living adjustments, investment returns, interest or longevity raises, as discussed in Hare, to which Ms. Mechana has a legitimate claim. See Hare, 586 So.2d at 128. The SERO enhancements were offered to Mr. Lambert personally as an inducement to accept early retirement. This transaction fits more easily into the category of an agreement between employee and employer negotiated long after the termination of the community. The decision to take the deal had to be made by a certain date and no guarantee was given that the offer would be made again.
*752 Some benefit does accrue to Ms. Mechana in that the benefits began earlier than the normal retirement date and the "community fraction" of each benefit paid under the normal early retirement plan was increased by the use of a lower denominator, representing the total number of years of creditable service, in the Sims formula. See Hare, 586 So.2d at 124-25; Sims v. Sims, 358 So.2d at 924.
For these reasons, we reverse the portion of the judgment holding that Ms. Mechana has a claim on the SERO benefits and exclude that sum from the amount of pension benefits from which Ms. Mechana's fractional share is derived. After subtracting the SERO benefits included in each payment to Mr. Lambert, Ms. Mechana is entitled to 31.77215% of the remaining monthly pension benefit paid to Mr. Lambert. We remand this matter to the trial court for amendment of the judgment and QDRO consistent with this opinion and in a form acceptable to the plan administrator.
The costs of the appeal are assessed equally between Mr. Lambert and Ms. Mechana.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.