761 So.2d 700 (2000)
Barbara Bing HANNAN
v.
Nicolo J. HANNAN.
No. 99 CA 0842.
Court of Appeal of Louisiana, First Circuit.
May 12, 2000.
*702 Harry P. Pastuszek, Jr., Mandeville, Counsel for Plaintiff/Appellant, Barbara Bing Hannan.
Rykert O. Toledano, Jr., Covington, Counsel for Defendant/Appellee, Nicolo J. Hannan.
Before: LeBLANC and PETTIGREW, JJ., and KLINE[1], J. Pro Tem.
LeBLANC, J.
This matter is an appeal from a judgment by the district court partitioning the community property of Ms. Barbara Bing Hannan, plaintiff/appellant, and Mr. Nicolo J. Hannan, defendant/appellee. For the following reasons, we affirm in part, reverse in part, vacate in part and remand.

FACTS
Ms. Hannan began working for South Central Bell[2] on August 8, 1960. On February 18, 1962, she and Mr. Hannan were married in St. Tammany Parish, and four children were born of the marriage. On November 30, 1983, a judgment of separation was entered. A subsequent judgment of divorce ordered Mr. Hannan to pay monthly child support and alimony. Ms. Hannan's employment continued with Bell until her early retirement on November 1, 1991. Ms. Hannan's various job classifications during her employment included clerk, stenographer, secretary and administrative assistant. During her early employment, Ms. Hannan participated in Bell's employee's retirement plan. Later, after a voluntary transfer, she qualified and participated in Bell's management pension plan.
In 1991, Ms. Hannan took advantage of an early retirement option offered to her by Bell. At the time of her retirement, her employee plan had a balance of $36,229.21 and her management plan had a balance of $136,168.66. She rolled over the sums from her two plans into an individual retirement account (IRA). By January 1998, the funds in her IRA had grown to a value of $312,595.31.
The record includes a 1984 petition by Ms. Hannan for partition of community property, but the record reveals no further action in this matter until a September 1994, motion by Mr. Hannan to vacate the judgment ordering child support and alimony. In October 1994, Ms. Hannan filed a rule for past due child support, alimony and contempt, seeking $29,200.00 for past due child support and $39,300.00 for past due alimony. In January 1995, the parties entered into a stipulation awarding Ms. *703 Hannan back due support, and a judgment was rendered concerning the past due amounts. In February 1995, Mr. Hannan sought a partition of community property.
Trial in this matter was held on June 23, 1998. By stipulation of the parties, the issues before the court were limited to Mr. Hannan's interest in Ms. Hannan's IRA and certain issues concerning Mr. Hannan's arrearages for child support and alimony. The issue of Mr. Hannan's interest was submitted by memorandum together with the depositions and reports of Mr. Mark Heller, the court-appointed expert, and Mr. Mark Shirley, Ms. Hannan's expert. Judgment was rendered, and the district court held Mr. Hannan's interest in Ms. Hannan's Bell employee plan was $17,729.77; his interest in Ms. Hannan's Bell management plan was $87,616.43; Ms. Hannan was responsible for any penalties and/or tax liabilities.[3] Ms. Hannan appeals.

LAW AND DISCUSSION
Ms. Hannan's appeal raises several issues: 1) the equitable principles of La. R.S. 9:2801; 2) the district court's choice between experts; 3) the designation of Ms. Hannan's IRA as community property; 4) the effects of ERISA and the IRA Act; 5) the application of Hare v. Hodgins; 6) Ms. Hannan's early retirement; and 7) the allocation of taxes and penalties.
A court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding that is manifestly erroneous or clearly wrong. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882, n. 2 (La.1993). Before an appellate court may reverse a factfinder's determinations, it must find from the record that a reasonable factual basis does not exist for the findings and that the record establishes that the findings are clearly wrong (manifestly erroneous). Stobart, 617 So.2d at 882; see Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).

The IRA as Community Property

(Assignment number 3)
Ms. Hannan argues that because the IRA was purchased after the termination of the community it is not community property, and the district court erred in so ruling. Initially, we note the district court's ruling classifies no particular property as separate or community. Rather, it merely recognizes the value of Mr. Hannan's portion of community property. Under Louisiana law, property is characterized as either community or separate. La. C.C. art. 2335. In T.L. James & Co., Inc. v. Montgomery, 332 So.2d 834, 841 (La. 1975), our supreme court held that an employee's contractual pension right is not a gratuity but a property interest earned by him. To the extent that the right derives from the spouse's employment during the existence of the marriage, it is a community asset subject to division upon dissolution of the marriage. La. C.C. art. 2338; Sims v. Sims, 358 So.2d 919, 922 (La. 1978).
That portion of the funds in the retirement plans attributable to employment during the existence of the community is community property. Likewise, that portion of the IRA that was purchased with community property funds is community property. See Frazier v. Harper, 600 So.2d 59, 61-63 (La.1992). There is no merit to this assignment.

Equity and Taxes and Penalties

(Assignment numbers 1 and 7)
Ms. Hannan asserts the district court erred in ordering her to bear the burden of all taxes and/or penalties. Louisiana Revised Statute 9:2801 sets forth the procedure to be followed by the parties in partitioning the community property and settling claims between them. In particular, *704 La. R.S. 9:2801(4) directs the trial court as follows:
The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
The tenor of La. R.S. 9:2801 is to effect an equitable distribution of community assets and liabilities. To order an immediate payment of future retirement funds and to saddle one party with any and all taxes and/or penalties, on its face, does not comport with the principle of the statute. In this instance, Ms. Hannan has placed these funds into an account that, if withdrawn early, may result in taxes and penalties. See 26 U.S.C. § 408. To order her to bear the entire burden of any and all taxes and/or penalties for early withdrawal, merely to provide Mr. Hannan with an immediate interest in what are acknowledged by all parties to be future retirement funds, we find inequitable and in contravention with the letter and the spirit of the statute. In this instance, any liability for taxes and/or penalties must be borne by the parties in proportion to their respective rights.
We find the facts in the instant case distinguish it from Ramstack v. Krieger, 470 So.2d 162, 166-67 (La.App. 4 Cir.), writ denied, 474 So.2d 1310 (1985). In Ramstack, the value of a husband's retirement account, held to be essentially the same as an IRA, was not discounted to reflect potential tax penalties. However, therein, the husband was seeking a credit to reduce the valuation of his IRA in the calculation of the equalizing payment due him from his former wife. While the district court recognized the IRA provided the husband with an option to withdraw the funds and incur the tax liability or leave the funds in the account and earn interest, he was not subject to a court order wherein he was made liable for the taxes or penalties, as is the case in the instant matter. We reverse that portion of the judgment assigning any and all taxes and/or penalties to Ms. Hannan. As stated above, upon partition, both the rights and the liabilities in these parties' community property must be shared equally.

Application ofHare v. Hodgins

(Assignment number 5)
It is well established that in the case of ordinary retirement benefits, the non-employee spouse's right to share in the retirement benefits of the employee spouse is calculated under the formula set out in Sims v. Sims, 358 So.2d at 924. Pursuant to the Sims formula, the community interest in an unmatured retirement plan is expressed as a fraction with the numerator representing the number of years of creditable service that accrued during the existence of the community and the denominator representing the yet undetermined total years of creditable service. This fraction representing the community interest in the pension is then multiplied by one-half to determine the non-employee spouse's share of the retirement benefits. The employee spouse is entitled the remaining one-half of the community fraction, as well as the full amount of the fraction representing the years of service both prior to and after the existence of the community. Sims, 358 So.2d at 924.
In Hare v. Hodgins, 586 So.2d 118, 123 (La.1991), the pension rights issue involved a matured pension. The court was concerned that a rigid application of the Sims formula in that situation might not produce the most equitable result. In addressing that issue, the court noted that although the Sims formula was one of the principal methods of apportioning pension benefits, it was not the only method by which unmatured pension rights could be *705 valued. The court in Hare recognized that in some cases, the Sims fraction may not always accurately reflect the relative community and separate components, such as when there have been post-divorce increases to the pensions benefits due to high separate earnings in the employee spouse's later employment years. Hare, 586 So.2d at 127. When retirement benefits contain a substantial increment ascribable to the personal effort or achievement after termination of the community, the court may adjust the community fraction to credit the separate property of the employee spouse with that increment. The Hare court then listed the considerations to be weighed in making the determination whether the increments were due purely to personal merit. These include: 1) Does the increment represent a fairly substantial increase in the employee's post-community earnings? 2) Is the increment due to a non-personal factor, such as cost-of-living raises? 3) Is the increment attributable to the employee's meritorious individual efforts or achievements? Hare, 586 So.2d at 128.
Ms. Hannan argues her personal merit following the termination of the community resulted in substantial increases in her retirement benefits and that an adjustment to the Sims formula is proper. In support, she argues her transfer to Atlanta, her promotion, with its attendant move from the employee retirement plan to the management pension plan, and her substantial pay increases, all post-community, warrant her entitlement to modification of the Sims formula. The district court denied Ms. Hannan's request for an adjustment, finding her "twenty-one years during the community regime provided the foundation for her subsequent rise through the ranks to the position of executive secretary." Ms. Hannan's raises were held to be the "kind anticipated with a promotion, [sic] and the result of continued good service".
On review, we find no error in the district court's ruling. While Ms. Hannan's transfer, promotions and salary increases may have been dramatic, they were not so remarkable as to be above the natural progression of a capable and highly valued employee. They were not outside her general job classification, nor does the record establish they were the results of any particular meritorious act or effort, such as a novel innovation or suggestion. This assignment is without merit.

Court's Choice Between Experts

(Assignment number 2)
Ms. Hannan argues the district court erred in its decision to accept the opinion of Mark Heller, the court-appointed expert, rather than Mark Shirley, Ms. Hannan's expert, for some of the value calculations. The district court adopted the methodology and calculations of Mr. Shirley in determining the value of Mr. Hannan's interest in the Bell employee plan. Concerning the Bell management plan, the district court accepted Mr. Heller's methodology and calculations.
Where expert testimony differs, it is the trier of fact who must determine the more credible evidence, and factual findings based upon that determination may not be overturned unless manifest error appears in the record. The fact-trier is entitled to assess the credibility and accept the opinion of an expert just as with other witnesses, unless the stated reasons of the expert are patently unsound. Of course, the effect and weight to be given such expert testimony depends upon the underlying facts and rests within the broad discretion of the trial judge. Moreover, in deciding to accept the opinion of one expert and reject the opinion of another, a trial court can virtually never be manifestly erroneous. (Citations omitted).
Fox v. Fox, 97-1914, p. 2 (La.App. 1 Cir. 11/6/98), 727 So.2d 514, 516, writ denied, 99-0265 (La.3/19/99), 740 So.2d 119, quoting Chance v. Chance, 29,591, p. 3 (La.App. 3 Cir. 5/7/97), 694 So.2d 613, 617.
*706 Mr. Heller opined the use of a straight Sims formula was proper in the calculation of Mr. Hannan's interest in the Bell management plan, whereas Mr. Shirley argued Ms. Hannan was entitled to a modification of Sims under Hare. We have found no error with the failure of the district court to apply the modifications of Hare. This assignment is without merit.

Effects of ERISA and the IRA Act

(Assignment number 4)
In brief, Ms. Hannan also argues the Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 832, as amended, 29 U.S.C. § 1001 et seq., and the Individual Retirement Account Act (IRA Act), 26 U.S.C. § 408, preempt application of Louisiana's community property laws. In support, she cites Boggs v. Boggs, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997).
ERISA is designed to ensure the proper administration of pension and welfare plans, both during the years of the employee's active service and in his or her retirement years. Boggs, 520 U.S. at 839, 117 S.Ct. at 1760. Boggs held ERISA preempts a state law allowing a non-participant spouse to transfer by testamentary instrument an interest in undistributed pension plan benefits. Boggs, 520 U.S. at 841-54, 117 S.Ct. at 1761-67. The Supreme Court noted the object of ERISA was to "protect plan participants" and to "help guarantee the ... soundness of [private pension] plans." Boggs, 520 U.S. at 845, 117 S.Ct. at 1762.
We find the facts of Boggs distinguishable and hold the ruling does not control in the instant case. Boggs considered and ruled on the claim of beneficiaries of an attempted testamentary transfer of undistributed pension plan benefits under administration. In the instant matter, Mr. Hannan's claim is not against a plan under administration and is not grounded in his status as the beneficiary of an attempted testamentary transfer. No funds at issue in the instant matter are subject to administration. Boggs is not controlling.
Concerning Ms. Hannan's assertion the IRA Act preempts Louisiana community property laws, we note this issue was not raised in her memorandum to the district court and is argued for the first time on appeal. In addition, as we have noted above, the judgment in this matter merely recognizes the value of Mr. Hannan's portion of community property. The judgment, while noting the existence of an IRA, is a money judgment for the recognition of the value of certain community property. This assignment is without merit.

Ms. Hannan's Early Retirement

(Assignment number 6)
In this assignment, Ms. Hannan argues the failure of the trial court to consider the effects of her early retirement was error. Because the early retirement offered to her years after the termination of the community was a form of deferred compensation, Ms. Hannan asserts it was her separate property and was improperly classified as community.
In Mechana v. Lambert, 93-1204, p. 7-8 (La.App. 1 Cir. 4/8/94), 635 So.2d 747, 751, this court held a special early retirement option incentive package was not acquired during the existence of the community. Because the package was earned after the termination of the community, the enhancements under the package were the separate property of the employee spouse. Mechana, 93-1204 at 7, 635 So.2d at 751.
Our review of the record establishes that in 1991 Ms. Hannan was offered and accepted Bell's Voluntary Employee Early Retirement (VEER) plan, making her eligible for retirement by adding five years of service and age to her employment history with Bell. Utilizing the enhancements offered, she elected to receive a lump sum payment rather than increased monthly retirement payments. That sum was added to Ms. Hannan's management *707 plan and constituted some portion of the $136,168.66 balance in that plan upon its distribution to her. The VEER plan enhancements were offered and earned after the existence of the community. By virtue of her early retirement, Ms. Hannan agreed to forego continued job benefits and compensation that would have been classified as separate property. See Mechana, 93-1204 at 8, 635 So.2d at 751. The value of the enhancements is Ms. Hannan's separate property and forms no part of the community between she and Mr. Hannan.
It is unclear from the record if the district court correctly classified as Ms. Hannan's separate property that portion of the distributed balance of the management plan that was attributable to Ms. Hannan's early retirement. The record in this matter is uncertain in this regard, and therefore we cannot review whether Ms. Hannan's separate property contained within the balance of the management plan was properly segregated from the community property portion before application of the Sims formula. For this reason, we vacate that portion of the district court's ruling decreeing Mr. Hannan's interest in Ms. Hannan's management plan funds in the amount of $87,616.43. We remand, with instructions to the district court to calculate Mr. Hannan's interest in the management fund after identifying and segregating that portion that is attributable to Ms. Hannan's early retirement and is therefore, her separate property. In all other respects, the judgment of the district court is affirmed. Costs of this appeal assessed equally between Ms. Hannan and Mr. Hannan.
AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART; AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Retired Judge William F. Kline, Jr. serving by order of the Louisiana Supreme Court.
[2] Ms. Hannan's employer's name changed during the course of her employment. For convenience, we will refer to her employer as "Bell".
[3] The Judgment also recognized a credit in favor of Ms. Hannan for past due child support, to be satisfied from Mr. Hannan's interest in the retirement plans.