NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 07-630

SUCCESSION OF KATHRYN ANDREWS LAMBERT

**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 11849
HONORABLE ERIC ROGER HARRINGTON, DISTRICT JUDGE

**********

BILLY HOWARD EZELL
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

AFFIRMED IN PART, AND REMANDED.

John Edward Fitz-Gerald
Attorney at Law
One Lakeshore Drive, Suite 1460
Lake Charles, LA 70629
Counsel for Appellant:
Michael Glenn Lambert

Charles Raymond Whitehead, Jr.
Whitehead Law Offices
P. O. Box 697
Natchitoches, LA 71458-0697
(318) 352-6481
Counsel for Appellant:
Julie Boudreaux

**Jeffrey Howerton Thomas**
**Thomas & Thomas Law Firm**
**P. O. Drawer 548**
**Natchitoches, LA 71458-0548**
**(318) 352-6455**
**Counsel for Appellee:**
**Jerry Glenn Lambert**

**William Alan Pesnell**
**The Pesnell Law Firm**
**P. O. Box 1794**
**Shreveport, LA 71166-1794**
**(318) 226-5577**
**Counsel for Appellee:**
**Jerry Glenn Lambert**

**EZELL, JUDGE.**

In this succession matter, Julie Lambert Boudreaux and Michael Lambert appeal the decision of the trial court finding that their father retained a legal usufruct over community funds bequeathed them by their deceased mother, Kathryn Lambert. Their father, Jerry Lambert, also appeals the decision of the trial court, claiming that the funds should not have been included in the succession or should now be his separate property. For the following reasons, we affirm the decision of the trial court in part, and remand.

Jerry and Kathryn Lambert were married and had two children, Julie and Michael. During the marriage, Jerry worked at Texaco and accumulated a substantial retirement pension. There is no dispute that the pension was a community asset. In June of 1989, Jerry and Kathryn elected to receive a lump sum payment of $320,851.76 from the pension in lieu of an annuity. This money was rolled over into an IRA with Main Stay mutual funds. The record is devoid of any evidence as to the pay status of the IRA at that time. In 1992, Kathryn executed a last will and testament, leaving all her property to Julie and Michael, subject to a usufruct in favor of Jerry until his death or remarriage. Kathryn died in May of 1994. At the time of Kathryn's death, the IRA had a value of $560,229.11.

After her death, but prior to the opening of Kathryn's succession, Jerry rolled the Main Stay funds over to yet another IRA, run by Edward D. Jones. When the succession of Kathryn Lambert was opened in April of 1995, the detailed descriptive list included the account as community property. A subsequent judgment of possession recognized Julie and Michael as naked owners of Kathryn's one-half interest in the account, subject to the usufruct defined by Kathryn's will.

1

Jerry remarried in 1997, prompting Julie and Michael to demand their mother's one-half interest in the account. Jerry responded by seeking to re-open the succession and have the IRA removed from the list of community assets. After much legal wrangling, the trial court ultimately decided that the IRA was derived from community funds and was, therefore, a community asset to be included in the succession. However, he found that La.R.S. 9:1426 applied, creating a legal usufruct in favor of Jerry to run until his death, despite the terms of Kathryn's will. From this decision, all parties appeal.

Jerry asserts two assignments of error on appeal. He claims that the IRA should have been a non-probate item and not a part of the succession, or that, alternatively, it should have been classified as his separate property. Julie and Michael assert three assignments of error that essentially amount to two: that the trial court erred in applying La.R.S. 9:1426 rather than La.R.S. 9:2440 and 2441, thereby creating a continuing usufruct, and that the trial court erred in failing to recognize Jerry's obligation to pay to Kathryn's estate one-half the value of the Main Stay IRA.

We will address Jerry's assignments of error first and will address them together. In *Smith v. Smith*, 311 So.2d 514, 524 (La.App. 3 Cir.1974), *writ denied*, 313 So.2d 840 (La.1975)(citations omitted), we stated:

> Property acquired during the existence of the community of acquets and gains is presumed to be community property. The burden of overcoming this presumption rests upon the party asserting the separate and paraphernal nature of the property. To overcome this heavy burden, the proof must be clear, positive and of a legally certain nature that the property for some reason did not become a part of the community.

Thus, Jerry bears the heavy burden of proving the IRA was not a community property interest. The trial court correctly and succinctly addressed Jerry's claims in its reasons for judgment, noting:

2

The case cited by [Jerry], <u>Boggs v. Boggs</u>, 520 U.S. 833, 117 S.Ct. 1754 (1997), is not applicable to this case. In that case, the employee/husband withdrew the money from his pension plan and rolled it over into an IRA after his first wife died. The Supreme Court held that ERISA preempted the children's Louisiana community property law rights in the IRA. ERISA mandates that retirees own pension plan benefits free of any community property rights of a spouse or child. However, in that case, the children sought a community property interest in benefits that were undistributed at the time of [their mother's] death. In the present case, the pension was distributed and rolled over into an IRA while Mrs. Lambert was alive. This exact scenario was left open by the <u>Boggs</u> Court:

> This case does not present the question whether ERISA would permit a non-participant spouse to obtain a devisable community property interest in benefits paid out **during the existence of the community** between the participant and that spouse.

> *Id*. at 845 (emphasis added). . . .

We agree with the trial court's analysis of this issue and find *Boggs* to be distinguishable, as the Texaco ERISA retirement plan was emptied out during the existence of the community. The Lambert's account was accumulated as a result of community labor, and was, therefore, a community asset when it was rolled over into the Main Stay account. There is no question that community funds were used to open the IRA. There, it remained a community asset. *See Hannan v. Hannan*, 99-842 (La.App. 1 Cir. 5/12/00), 761 So.2d 700, *writ denied*, 00-1723 (La. 9/29/00), 770 So.2d 349. Hence, we conclude that the community of acquets and gains owned a sum of money equivalent to the value of the IRA at the time of decedent's death. *Succession of McVay v. McVay,* 476 So.2d 1070 (La.App. 3 Cir. 1985). Jerry's assignments of error are without merit, and the trial court's decisions on these issues are hereby affirmed.

Julie claims that the trial court erred in failing to recognize Jerry's obligation to pay to Kathryn's estate one-half the value of the Main Stay IRA, should we find the account to be Jerry's separate property. Because we have found that the account

3

is, indeed, community property, this assignment of error need not be addressed. Julie and Michael both claim that the trial court erred in applying La.R.S. 9:1426 to continue the usufruct in favor of Jerry, rather than La.R.S. 9:2440 and 9:2441. We also disagree with this assertion.

Louisiana Revised Statutes 9:1426 states:

> A. (1) If a recurring payment is being made from a public or private pension or retirement plan, an annuity policy or plan, an individual retirement account, a Keogh plan, a simplified employee plan, or any other similar retirement plan, to one partner or to both partners of a marriage, and the payment constitutes community property, and one spouse dies, the surviving spouse shall enjoy a legal usufruct over any portion of the continuing recurring payment which was the deceased spouse's share of their community property, provided the source of the benefit is due to payments made by or on behalf of the survivor.
>
> (2) This usufruct shall exist despite any provision to the contrary contained in a testament of the deceased spouse.
>
> B. The usufruct granted by this Section shall be treated as a legal usufruct and is not an impingement upon the legitime and a naked owner shall not have a right to demand security.

Louisiana Revised Statutes 9:2440 states, "A testament, testamentary provision, legacy, or other appointment executed prior to January 1, 1998, and valid under the law and jurisprudence prior to that date, when executed, is not invalidated by the passage of Acts 1997, No. 1421." Louisiana Revised Statutes 9:2441 reads, "When a testament executed prior to June 18, 1996, leaves a usufruct to the surviving spouse without specifying its duration, the law in effect at the time the testament was executed shall govern the duration of the usufruct."

Julie and Michael claim that these statutes should somehow negate La.R.S. 9:1426. However, that statute was the law in existence at the time Kathryn wrote her will, although it was, at the time, designated as La.Civ.Code art. 890.1. Therefore, the legal usufruct created by La.R.S. 9:1426 would unquestionably exist if a recurring payment was being made from the Main Stay IRA at the time of Kathryn's death.

4

However, while the record contains evidence of recurring payments from the irrelevant Edward Jones IRA formed after Kathryn's death, there is no evidence in the record as to the pay status of the Main Stay IRA. Jerry alleges that it was unchallenged at the trial court level that the IRA in question was in pay status at the time of Kathryn's death, and he did claim the IRA was in pay status in pleadings filed in the court below. He further asserts that the issue of whether recurring payments were being made was not raised until the present appeal. Accordingly, he filed a motion to remand to have the record supplemented with the alleged payment information. Because the issue of whether recurring payments were being received from the Main Stay IRA during Kathryn's life is not only material to the determination of the rights of the parties involved, but completely dispositive of this matter, we find that, in the interest of justice, we must remand this case to the trial court for supplementation of the record on this narrow issue.

The decisions of the trial court as to the community property status of the Main Stay IRA and its place in the succession of Kathryn Lambert are hereby affirmed. We remand this matter to the trial court so that the record may be supplemented by the introduction of evidence as to the pay status of the Main Stay IRA at the time of Kathryn Lambert's death. Costs of this appeal are to be divided between Jerry, Julie, and Michael Lambert.

**AFFIRMED IN PART; AND REMANDED.**