*In re* MARRIAGE OF WILMA SHIELDS, Petitioner-Appellant, and JOHN SHIELDS, Respondent-Appellee.

Fourth District   No. 4—87—0446

Opinion filed February 11, 1988.—Rehearing denied April 25, 1988.

Robert G. Heckenkamp and Richard H. Narup, both of Heckenkamp, Simhauser & Drake, P.C., of Springfield, for appellant.

Diane N. Cherry, of Metnick & Barewin, of Springfield, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 30, 1987, the circuit court of Sangamon County ordered the marriage of petitioner Wilma Shields and respondent John Shields dissolved. In the judgment for dissolution of marriage, the court required petitioner to pay certain nonmarital debts of respondent and granted maintenance to respondent. Petitioner petitioned the court to

reconsider the award of maintenance, but, on June 11, 1987, the court refused. Petitioner appeals from the court's decision denying her petition. We affirm.

Petitioner raises two issues on appeal: (1) whether the court erred in requiring her to pay certain nonmarital debts of respondent; and (2) whether the court erred in awarding maintenance to respondent.

Because our decision is limited due to the special circumstances which exist in this case, it is necessary to set forth the facts in some detail. Respondent and petitioner married on August 11, 1979. At the time of the marriage, respondent was a physician in Springfield who acquired numerous assets, including a partnership interest in a ski-resort condominium in Vail, Colorado. Petitioner, on the other hand, was training to be a nurse anesthetist and entered the marriage with only an automobile and home in Alton, Illinois. Over the next two years, the parties maintained a commuter weekend marriage, as petitioner was obligated to remain in Alton. She testified she paid her own bills during that time period, but admitted respondent "probably gave [her] money for personal things."

In June of 1981, petitioner joined respondent in Springfield. One month later, respondent's problems associated with alcohol abuse resulted in the suspension of his medical license. Although admitted into a treatment program, respondent's alcoholism problems remained, and petitioner subsequently filed for dissolution on December 30, 1983.

Before the parties' marriage was dissolved, respondent suffered a disabling stroke. Petitioner withdrew her first petition for dissolution and became temporary guardian of respondent's estate. Petitioner testified she borrowed $1,200 on a Visa account while serving in her capacity as guardian. She said she used the money to make a mortgage payment necessary to effectuate a sale of a nonmarital asset owned by respondent. The court subsequently appointed another guardian, who sold respondent's interest in the Vail partnership property and used the proceeds from it to pay his nonmarital debts. The sale of the property increased respondent's Federal and State income tax liability by $20,591. (The parties filed separate returns.) The debt for those taxes was still unpaid at the time of decree.

Petitioner filed a second petition for dissolution on July 25, 1985. Under order dated March 30, 1987, the trial court dissolved the parties' marriage and allocated the debts and assets of the parties. Petitioner was awarded almost all of the marital property, including two cars, the Springfield condominium, jewelry, mutual funds, and other investments. The assets had a total value of approximately $117,000.

However, the court ordered her responsible for payment of the taxes incurred from the sale of the Vail property ($20,591), for payment of the Visa loan taken out while she served as respondent's guardian ($1,200), and for payment of half of the fees for a guardian *ad litem* for respondent in the proceedings when he was placed under guardianship. The court also ordered petitioner to pay respondent maintenance of $180 per month.

In its order the court awarded respondent three notes made payable to him. Although the amount of these notes totalled $45,395, petitioner testified two of the notes, totalling $41,060, had been taken out by respondent's stepdaughters, and payments on these loans had ceased after his illness. The court also required the petitioner to pay respondent $13,136.82, as his share of the approximately $50,000 equity in the parties' Springfield condominium which was awarded to her. Several bills, most of which appeared to be nonmarital debts, were ordered paid out of that sum. Finally, respondent was obligated to pay one-half of his guardian *ad litem* fees in the instant proceeding.

At the time of dissolution, petitioner was still employed and earned an annual salary of $42,000. She was 45 years old. On the other hand respondent, age 69, received monthly annuity and social security payments totalling $1,285.63. Respondent has no prospect for future employment due to his stroke and will probably remain in a nursing home.

■ Petitioner first contends the trial court erred in ordering her to pay certain nonmarital debts of respondent. Included in those debts are the tax liability resulting from the sale of the Vail property, the Visa loan and respondent's guardian *ad litem* fees. In both *In re Marriage of Legge* (1982), 111 Ill. App. 3d 198, 443 N.E.2d 1089, and *In re Marriage of Block* (1982), 110 Ill. App. 3d 864, 441 N.E.2d 1283, the courts classified debts as marital and nonmarital and stated that marital debts have to be considered in the division of marital property. The *Block* court indicated marital debts as well as marital property must be equitably distributed. If such a classification is proper, the debts in issue here appear to be nonmarital, as they arose from the sale of respondent's nonmarital assets or the administration of his affairs.

Section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that, in dissolution proceedings, the court is to assign any nonmarital property to the respective spouse who owns it and then divide the marital property "in just proportions." (Ill. Rev. Stat. 1985, ch. 40, par. 503(d).) Logically, a spouse would usually be

required to pay his or her nonmarital debts, and the requirements as to the payment of the marital debts would be determined at the time of dividing the marital property. Nevertheless, we conclude the circumstances here justified the court in requiring petitioner to pay respondent's nonmarital debts.

If petitioner was not required to pay the disputed nonmarital debts, fairness would have dictated that respondent receive more of the marital property to use to pay the debts. Regardless of who got that portion of the property, sale of it would be necessary. Petitioner is gainfully employed and is in relatively good health. On the other hand, respondent is confined to a nursing home, has no prospects for future employment and has his financial affairs handled by a guardian. A cursory examination of each parties' situation clearly shows petitioner is in a much better position, both physically and financially, to see to the liquidation of the necessary amount of property. Having her make the liquidation would also save the expense of conducting the liquidation through the guardianship proceedings. The court undoubtedly considered these matters in reaching its decision. The court did not breach its discretion in doing so.

■ Next, petitioner complains the facts of the case do not justify the maintenance awarded to respondent by the trial court. Under section 504 of the Act, a court may award a spouse maintenance if the spouse:

> "(1) [L]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, and
>
> (2) is unable to support himself through appropriate employment ***, or
>
> (3) is otherwise without sufficient income." (Ill. Rev. Stat. 1985, ch. 40, par. 504.)

Here, the only marital property awarded respondent was three notes, two of which were delinquent at the time of dissolution and of questionable value. Because of his debilitating stroke, respondent cannot now, and probably will never again, work. Finally, his only sources of income outside of maintenance are from social security and an annuity. An exhibit introduced by respondent indicates the approximately $1,300 he receives monthly from these two sources barely pays for nursing home care and his other expenses. Based on these facts, we cannot say the trial court abused its discretion in awarding maintenance to respondent.

However, we intend to make clear that the disposition in this case was justified only because of the exceptional conditions involved. As we have indicated, the spouse incurring nonmarital debts should al-

most always be required to pay them. Ordinarily, neither the lopsided marital property award in favor of the petitioner nor the burdens placed on her to pay respondent's nonmarital debts and to pay maintenance to him would be justified. Here the award of property and the imposition of the burdens balance out and make sense considering the respondent's illness and the difficulty of liquidating the marital property.

For the reasons stated, we affirm the decision of the trial court.

Affirmed.

LUND and KNECHT, JJ., concur.