# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Zamudio*, 2019 IL App (3d) 160537

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF LOUISE ZAMUDIO, f/k/a Louise Ochoa, Petitioner-Appellant, and FRANK OCHOA JR., Respondent-Appellee. |
| District & No. | Third District<br>Docket No. 3-16-0537 |
| Filed | February 20, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Whiteside County, No. 14-D-94; the Hon. John L. Hauptman, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Louis F. Pignatelli and Elizabeth Uhrich, of Pignatelli & Associates, P.C., and Allison B. Fagerman, of Law Office of Allison B. Fagerman, P.C., both of Rock Falls, for appellant.<br><br>Paul A. Osborn and Amanda J. Beveroth, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellee. |

Panel                    JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Presiding Justice Schmidt dissented, with opinion.

**OPINION**

¶ 1    Petitioner Louise Zamudio, formerly known as Louise Ochoa, and respondent Frank Ochoa Jr. were married in January 2000. The parties divorced in May 2016. At issue during the dissolution proceedings was whether Frank's 48 months of permissive military service credit, which he earned prior to the marriage but purchased during the marriage with marital funds in order to enhance his State Retirement Systems pension, was marital property that should be considered when determining the marital portion of his pension. Ultimately, the trial court determined the enhancement itself was not marital property, but it found that Frank must reimburse Louise for her marital share of the funds used to purchase the enhancement. Frank does not dispute that portion of the trial court's ruling.

¶ 2    Louise appeals, asserting the trial court's judgment is reversible error. Specifically, she argues the permissive military service credit is marital property since the enhancement was purchased with marital assets.

¶ 3                              FACTS

¶ 4    The parties were married in January 2000. In May 2014, Louise filed a petition for dissolution of marriage. In anticipation of the dissolution of their marriage, the parties mutually resolved all but two issues. The unresolved issues concerned the disposition of Frank's pension, which began to accumulate prior to the marriage, and the amount and duration of maintenance.

¶ 5    Frank engaged in active duty military service from 1974 to 1980, after which he entered the military reserves, where he served until 2003. He began working for the Illinois State Police in August 1989.

¶ 6    During the course of the parties' marriage, Frank used marital assets to purchase 48 months of permissive military service credit to enhance his pension. Specifically, in both 2004 and 2008, he purchased 24 months of permissive credit for a total cost of $9626.40. His eligibility for the permissive service credit derived from his active duty military service completed approximately 20 years prior to the marriage. Frank retired from the Illinois State Police on August 1, 2011, with 320 months of service, which included 263.5 months of regular service credit, 48 months of permissive service credit purchased during the parties' marriage, 6 months of unused/unpaid sick time, and 2.5 months of sick/vacation time he had also purchased. Frank began receiving monthly annuity checks on or about August 1, 2011. He received 58 checks during the marriage. The initial monthly annuity payment was $9088.86, of which $1363.33 represented the increase attributable to the purchased credits. Without the additional credits, Frank's monthly annuity would have been $7725.53.

¶ 7    The parties agreed that Louise was entitled to 50% of the marital portion of Frank's pension; however, they disagreed on how much of Frank's pension was classified as marital.

In that regard, both Frank and Louise submitted written arguments to the court. Frank asserted that Louise was entitled to reimbursement for contribution to the purchase of the permissive military service credit but she was not entitled to any interest in that portion of his pension. In contrast, Louise argued that the pension account was marital property as was the enhancement created by purchasing the 48 months of permissive service credit with marital assets.

¶ 8 In April 2016, the trial court entered a written order, finding in pertinent part "[t]hat because Frank acquired th[e] military permissive service to increase the number of months of service in order to enhance the benefit he would receive from his state pension *during the term of the marriage*, those months were earned during the marriage and should be included in the numerator of the fraction to determine the marital share of his pension."

¶ 9 Frank timely filed a motion to reconsider, arguing the trial court erred, as a matter of law, in finding the 48 months of permissive service credit to be marital property. He asserted the court's judgment ignored the fact that the permissive service credit could not have been purchased without his active duty military service, which was completed long before the parties married. He further maintained that "the eligibility and the 48 months of military service were not transformed into marital property when [he] exercised his right to purchase the military time with marital funds during the marriage." Rather, citing *In re Marriage of Ramsey*, 339 Ill. App. 3d 752 (2003), he argued that the timing of the purchase and the use of marital funds merely created a right of reimbursement in the marital estate for its monetary contributions.

¶ 10 Ultimately, the trial court agreed with Frank. In its August 2016 order, the court found it had erred in its prior judgment by failing to apply *Ramsey*. The court acknowledged the enhancement was purchased during the term of the marriage, but it noted that the enhancement "was not 'purely derivative' of [Frank's] right to receive his state pension because what was purchased to enhance the pension *** was military time earned prior to the marriage." The court held "[t]hat in keeping with the holding in *Ramsey*, [Frank] should reimburse [Louise] for her marital share of these funds which [it] f[ound] to be in the amount of $4,813.20."

¶ 11 Louise appeals.

¶ 12 ANALYSIS

¶ 13 On appeal, Louise maintains that the trial court erred in finding the 48 months of permissive service credit was not marital property.

¶ 14 Generally, we review a trial court's factual determination regarding whether an asset is marital property or not under the manifest weight of the evidence standard. *In re Marriage of Peters*, 326 Ill. App. 3d 364, 366 (2001). Here, however, the facts are not in dispute nor is the credibility of the witnesses at issue. See *id.* Instead, our only concern is to determine the legal effect of undisputed facts. *Id.* Specifically, we must determine whether the permissive service credits purchased with marital assets during the term of the parties' marriage in order to enhance Frank's pension are marital property, even though the entitlement to the enhancement is not entirely derivative of Frank's right to receive his pension. Accordingly, our review is *de novo. Id.*

¶ 15 Both parties seem to rely on *Ramsey*, 339 Ill. App. 3d 752. In that case, the parties were married from 1969 to 1989, throughout which time the husband was employed as a schoolteacher who participated in the Teachers' Retirement System (TRS) of the State of

Illinois pension plan. *Id.* at 753-54. Following the dissolution of their marriage, the trial court reserved jurisdiction to divide the husband's pension. *Id.* at 754. In 2000, 11 years after the parties divorced, the husband took advantage of two early retirement incentives that were available to teachers with at least 20 years of service by making two one-time payments to the TRS of $7397.46 and $6390.60. *Id.* at 754-55. Following the husband's retirement later that year, the wife filed a motion seeking a qualified Illinois domestic relations order (QILDRO) to divide the husband's pension. *Id.* at 755. The Massac County circuit court found that the husband's nonmarital monetary contributions could not be severed from the rest of his pension, and thus, it included the portion of the pension attributable to the early retirement incentives purchased by the husband as part of the marital pension. *Id.* The husband appealed, asserting that the wife should not be entitled to any portion of his pension attributable to the early retirement incentives he purchased with nonmarital funds. *Id.* at 756.

¶ 16     On appeal, the Fifth District acknowledged that the husband's entitlement to the enhanced pension benefits flowed from both his right to receive pension benefits in the first place and from the lump-sum contributions he made following the dissolution of the parties' marriage. *Id.* at 763-64. The court noted that the husband would not have been eligible for the enhancements no matter how much money he paid into TRS but for his contributions to the plan through teaching for 31 years—60% of which he worked during the marriage. *Id.* at 764. In other words, the court found that the husband's entitlement to the enhanced benefit was not "purely derivative" of his right to receive his pension but, instead, resulted from both marital and nonmarital elements. See *id.* at 764, 766. The court concluded that "the most rational and equitable way to do justice to both parties is to require [the wife] to pay her proportionate share of the contributions necessary for [the husband] to qualify for the enhancements." *Id.* at 765. In conclusion, the court found "that when an early retirement incentive enhances pension benefits, to the extent that such enhancements are derivative of the right to receive the pension as deferred compensation, the proportion of the enhancement that is marital property is exactly the same as the proportion of the pension as a whole that is marital." *Id.* at 766. The court continued, "[i]n the unusual case where the entitlement to such enhancements is not purely derivative, however, that portion of the enhancement not derived from the right to receive the pension itself is the pensioner's sole property." *Id.*

¶ 17     We find *Ramsey* instructive, although not dispositive of the issue at hand. A key difference between *Ramsey* and the instant case is that, unlike the annuitant in *Ramsey*, Frank began receiving his annuity payments during the marriage. It is undisputed that Frank received 56 annuity payments during the marriage. This is not an insignificant factor. The *Ramsey* court was addressing the common problem of how to divide a pension benefit with an unknown future value. In other words, the question in *Ramsey* was one of valuation, not entitlement. The issue was how much of the pension check was subject to formulaic division, not whether a particular enhancement provision constituted marital or nonmarital property. To the extent that *Ramsey* addressed the concept of entitlement to enhancement pension benefits, it did so as *dicta*. However, *Ramsey* remains instructive regarding the proper resolution of this matter.

¶ 18     The fact that Frank had already been receiving an enhanced annuity benefit for 56 months during the marriage is significant for another reason. As the *Ramsey* court observed, "[i]f the pension enhancements are a separate and distinct benefit that came into existence after the dissolution, they are not a part of the pension to be divided." *Id.* at 757 (citing *Hannan v. Hannan*, 99-0842 p. 10 (La. App. 1 Cir. 5/12/00); 761 So. 2d 700, 707 (finding enhancements

to a pension to be an asset acquired after the marriage ended and therefore not subject to division along with the rest of the pension)). However, if the enhancement *came into existence* during the marriage, as in the instant matter, there is no simple solution. Instead, *Ramsey* suggests the court must look to whether the enhancement is *derivative* of the right to receive a pension in the first place or if the enhancement is *nonderivative* in the sense that the enhanced portion is directly and solely attributable to nonmarital contributions and not subject to division. See *id.* at 763. Regarding the *derivative* nature of a pension enhancement provision, the *Ramsey* court cogently observed that "the right to receive an early retirement incentive package necessarily depends upon the right to receive the pension." *Id.* Also, "[t]he right to pension enhancements can have no existence independent of the right to receive a pension." *Id.* In other words, to the extent that a pension benefit is a marital asset, any enhancement in value obtained during the marriage is also a marital asset subject to apportionment on an equitable basis.

¶ 19 In this case, Frank maintains that his eligibility for the 48-month permissive service credit stemmed *entirely* from his years of active duty military service, which was completed 20 years prior to the parties' marriage. However, Frank ignores the fact that his entitlement to the enhanced benefit is *derivative* of his entitlement to the pension in the first place. While it is undoubtedly true that, absent his military service, Frank would not have been entitled to purchase the permissive military service credit, it is equally true that that right to enhance the overall pension benefit accrued to his benefit as a result of his participation in the pension program, which provided the enhancement to members meeting the enhancement criteria.

¶ 20 In other words, Frank's entitlement to the enhanced value of each pension payment flows *both* from his participation in the plan itself *and* the fact that the pension statute allows him to enhance the present value of his annuity by an amount calculated based upon his prior military service. Viewed another way, Frank's entitlement to an enhanced annuity accrued while he participated in the pension plan, and thus, a portion of that credit accrued during his marriage to Louise. The fact that the enhancement was calculated based on a number equal to the number of months Frank served in the armed forces did not mean that Frank acquired the asset at the time of his military service. Frank's military service had no relationship to his pension benefit *until* he exercised the option of purchasing the 48 months of additional credits, which was done during the marriage and with the use of marital funds.

¶ 21 The major problem with the dissent is that it views Frank's four years of military service as nonmarital property that cannot be equitably divided by the trial court. The fundamental error in this analysis is in viewing the military service as "property." As we have previously noted, Frank's years of military service were not property but simply conditions precedent, which the Illinois Pension Code allowed Frank to use to enhance the current value of his pension. It was the current value of the annuity payments, acquired during the marriage, that constituted marital property subject to equitable division by the trial court.

¶ 22 In sum, we find that the trial court erred in determining that the 48-month permissive service credit was nonmarital property. Thus, we reverse the trial court on that question and remand for an equitable distribution of the marital value of the respondent's pension annuity.

¶ 23                    CONCLUSION

¶ 24        For the foregoing reasons, the judgment of the circuit court of Whiteside County is reversed and the matter is remanded for an equitable apportionment of the respondent's pension.

¶ 25        Reversed; cause remanded.

¶ 26        PRESIDING JUSTICE SCHMIDT, dissenting:

¶ 27        As far as I can tell, this is the first decision in the free world ordering a trial court to consider a 4-year period that occurred 20 years prior to the marriage, as though the parties were married during those 4 years, in order to calculate the marital portion of a pension.

¶ 28        The issue before us is whether the trial court properly ruled that four years of military service completed by Frank years before his marriage to Louise should not be included in the numerator to determine Louise's marital percentage of Frank's pension. I am sure by now, having read the majority's opinion, you understand that Frank purchased this with the use of marital funds. The trial court found that it was not marital property and ordered Frank to reimburse Louise for one-half of the purchase price of the four-year military pension credit. This is a simple case. Frank enhanced a nonmarital asset with marital assets, and therefore, he must repay, and I believe has repaid, Louise for her share of those funds. The trial court got it exactly right. Frank's 48 months of military credit are no more marital property than are the 11 years of credit he earned for his Illinois State Police service prior to the marriage.

¶ 29        The majority finds the fact that Frank began receiving his annuity payments during the marriage is "[a] key difference between *Ramsey* and the instant case" and "is not an insignificant factor." *Supra* ¶ 17. I submit the fact that Frank began receiving his annuity payments during the marriage is totally irrelevant to the issue of whether his premarital military service credits, albeit purchased during the marriage, are marital property. Let us not lose sight of the fact that Louise does gain a benefit from the four years of military credit as Frank's pension is larger than it would have been without that credit. That is, as in *Ramsey*, pursuant to the trial court's ruling, Louise is getting her marital portion of the *enhanced* pension.

¶ 30        The majority notes, while trying to both distinguish and incorporate *Ramsey*, "if the enhancement *came into existence* during the marriage, as in the instant matter, there is no simple solution." (Emphasis in original.) *Supra* ¶ 18. Yes, there is! The trial court got it right. So, the majority then goes on to proclaim that "*Ramsey* suggests the court must look to whether the enhancement is *derivative* of the right to receive a pension in the first place or if the enhancement is *nonderivative*." (Emphases in original.) *Supra* ¶ 18. First of all, under the majority's analysis, every enhancement to a pension is derivative of the existence of the pension. One cannot enhance an asset that does not exist. The majority correctly observes, "to the extent that a pension benefit is a marital asset, any enhancement in value obtained during the marriage is also a marital asset subject to apportionment on an equitable basis." *Supra* ¶ 18. Louise received her share of the enhancement in value. Yet the majority simply ignores this. The majority wants to include the four years of military service as marital property in addition to giving her the marital portion of the enhanced value of the pension. That is, the majority gives Louise the same benefit she would have received had she and Frank been married while he served in the military. This also gives Louise a larger slice of the entire unenhanced pension by, in essence, judicially adding four years to the marriage.

¶ 31     The majority states, "However, Frank ignores the fact that his entitlement to the enhanced benefit is *derivative* of his entitlement to the pension in the first place." (Emphasis in original.) *Supra* ¶ 19. "While it is undoubtedly true that, absent his military service, Frank would not have been entitled to purchase the permissive military service credit, it is equally true that that right to enhance the overall pension benefit accrued to his benefit as a result of his participation in the pension program, which provided the enhancement to members meeting the enhancement criteria." *Supra* ¶ 19. Yes, if Frank did not have a pension, it could not be enhanced. Got that. Louise received her marital portion of the enhanced pension. That is a far cry from the majority's novel and unsupported proposition that Frank's four years of military credit is marital property. It seems clear from the record that Frank could not have retired when he did absent his 11 years of Illinois State Police service prior to the marriage. Those years likewise enhanced his pension. Every year he served with the Illinois State Police enhanced his pension. Why not go for the gold and make those marital property, too?

¶ 32     Again, to conclude, Frank enhanced a nonmarital asset with marital funds. That does not make those 48 months of service marital property. See 750 ILCS 5/503(a)(2) (West 2016) ("[P]roperty acquired in exchange for property acquired before the marriage" is considered nonmarital property); *id.* § 503(c)(1)(A) (where nonmarital property is commingled with marital property, it retains its nonmarital status so long as it retains its identity); *In re Marriage of Henke*, 313 Ill. App. 3d 159, 168 (2000) (noting that the legislature amended section 503(c) of the Illinois Marriage and Dissolution of Marriage Act in 1983 in order to reject the presumption at the time that commingled property was always transmuted to marital property). Nonetheless, Louise did receive a benefit from the enhancement because she is receiving her marital portion of the total, enhanced pension. That is an equitable apportionment of Frank's pension. Calling those 48 months that Frank served in the armed forces 20 years before the marriage marital property and increasing the marital portion of the entire pension is without precedent. That is, the 48 months of military service should not be included in the numerator of the equation determining the marital portion of the pension. Neither the law, equity, nor common sense supports the majority's decision.

¶ 33     I would affirm the trial court.