**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200165-U

Order filed July 2, 2021
Modified Order Upon Denial of Rehearing filed August 3, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 14th Judicial Circuit, |
| HIEMI WINGERT, | ) | Mercer County, Illinois. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-20-0165 |
| and | ) | Circuit No. 14-D-41 |
| | ) | |
| RUSSELL WINGERT, | ) | Honorable |
| | ) | Theodore G. Kutsunis, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court.
Justices Daugherity and Schmidt concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court erred by assigning petitioner's nonmarital debt to respondent.

¶ 2    In 2016, the trial court entered an interim order dissolving the marriage of petitioner, Hiemi Wingert, and respondent, Russell Wingert. In 2017, the trial court entered orders distributing certain disputed debts of the parties. During the marriage, the parties cosigned two loans, totaling $97,000 and $99,472.35, respectively. Each loan was secured by Hiemi's nonmarital home and property. As part of the distribution of property, the trial court assigned

responsibility for the $99,472.35 loan to Russell. Russell appeals, arguing the trial court erred by assigning him a debt that was secured by Hiemi's nonmarital home and property.

¶ 3                                    I. BACKGROUND

¶ 4        Hiemi and Russell were married on June 5, 2010. After four years, on August 13, 2014, Hiemi filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (Act), 750 ILCS 5/101 *et seq.* (West 2014). During the marriage, Hiemi was self-employed as a beautician and Russell managed an automobile collision service. Although the parties maintained separate banking accounts, each party contributed to the couple's daily living expenses. No children were born of the four-year marriage.

¶ 5        The trial court entered an interim order, dissolving the parties' marriage, in August 2016. Thereafter, in 2017, the trial court entered orders distributing the parties' remaining disputed debts. Before the marriage, Hiemi purchased the marital home and property, which appraised for $252,000 in September 2010. Therefore, the trial court found the marital home and property was Hiemi's nonmarital home and property (Hiemi's nonmarital home and property). Significantly, the parties do not dispute this finding on appeal.

¶ 6        However, during the marriage, the parties cosigned two separate loans, each of which was secured by a mortgage on Hiemi's nonmarital home and property. The first loan, a 30-year loan with a 4.375% fixed interest rate, was executed on October 4, 2010, for a total of $97,000. The parties used the proceeds from the first loan to build a shed on the property of Hiemi's nonmarital home. The second loan, a 10-year home equity line of credit with a 3.25% variable interest rate, was executed on August 17, 2013, for a total of $99,472.35. The parties used a portion of the funds from the second loan to purchase a jointly owned spare parcel of property. The remainder of the funds from this loan were used to build and then furnish a beauty salon for

2

Hiemi in the shed erected with the funds from the 2010 loan. Each party has made payments on both loans from their separate banking accounts.

¶ 7 On November 3, 2015, the parties informed the trial court that they had reached an agreement to sell the jointly owned spare parcel of property. Therefore, the trial court ordered the parties to use the proceeds from the sale of the spare parcel of property to pay off a third loan, also obtained during the marriage.[1] The proceeds remaining from that sale, after the payment of the third loan, were placed in escrow as a marital asset and later awarded by the trial court.

¶ 8 The parties continued to dispute who was responsible for paying the debts associated with the loans from 2010 and 2013. On December 3 and 4, 2015, the trial court received written closing arguments on this issue, among others. Russell urged the trial court to assign the debts from the two loans to Hiemi since each loan was secured by and meant to improve Hiemi's nonmarital home and property. In her closing argument, Hiemi urged the trial court to order Russell to contribute payments toward each loan. Hiemi emphasized that Russell agreed to borrow the proceeds from each loan. The arguments supporting the parties' positions on the debt from these loans will be discussed in more detail below.

¶ 9 On June 6, 2016, the trial court entered an order assigning the debt from the two disputed loans. For various reasons, each party filed separate motions to reconsider at different points in time. In addition to her motion to reconsider, Hiemi filed a motion requesting a judgment of dissolution of marriage. On August 2, 2016, the trial court entered an interim order dissolving the parties' marriage. The interim order noted that, consistent with the trial court's prior order, the parties' third loan was paid off with the proceeds from the sale of the spare parcel of property. The remaining proceeds from that sale, held in escrow as a marital asset, were awarded to

---

[1]The third loan is not relevant to the present appeal.

3

Russell for reasons not relevant to the outcome of this appeal.[2] The parties do not dispute the trial court's allocation of those proceeds on appeal. In addition, the interim order awarded Hiemi the contents of her beauty salon. The trial court reserved ruling, in the interim order dated August 2, 2016, on issues related to the disputed loans and the parties' ongoing civil litigation.

¶ 10 On January 19, 2017, the trial court resolved the parties' separate pending motions to reconsider. Prefacing its ruling, the trial court stated: "[t]he financial situations both parties face make it clear *** the marital debt secured by the non-marital property far exceeds the value of the marital estate." The trial court then found, due to the short duration of the marriage, Russell's share of the marital estate was not compensated by his use of Hiemi's nonmarital home and property under section 503(c)(2) of the Act, 750 ILCS 5/503(c)(2) (West 2016).

¶ 11 The trial court reconsidered and then modified its ruling from June 2016. The trial court assigned responsibility for the debt corresponding to the 2013 loan, originally totaling $99,472.35, to Russell. However, Russell was to be compensated "up to one half *** of the total amount he ha[d] paid at the time of sale or disposition of [Hiemi]'s non-marital home." The trial court granted Russell a lien, "equal to the amount [he] will pay on the 2013 loan," which the trial court observed was "subservient to the two notes and mortgages already in place for one half."

¶ 12 Later, on April 18, 2017, the trial court clarified its ruling, stating Russell "shall assume and be wholly compensated up to one half (1/2) of the total amount he has paid in satisfying the debt on his [2013] note." The trial court stated the compensation would be required only if Hiemi voluntarily sold, or the superior lienholders foreclosed on, her nonmarital home and property.

---

[2]These proceeds, awarded solely to Russell, offset proceeds retained by Hiemi after she sold a John Deere tractor without court approval.

¶ 13 On June 22, 2017, the trial court, while incorporating by reference its January and April 2017 rulings, again clarified its decision. The trial court stated:

> "[Hiemi] shall assume and be wholly liable for the [$97,000] note and mortgage of October 4, 2010. [Russell] shall assume and be wholly liable for the [$99,472.35] loan of August 17, 2013, but he is to be compensated up to one half (1/2) of the total amount he has paid at the time of sale or disposition of [Hiemi]'s non-marital home. [Russell] is granted a lien on the non-marital estate of [Hiemi] equal to the amount [Russell] will pay on the 2013 loan. Said lien is to be subservient to the two notes and mortgages already in place for one half (1/2). To clarify, [Russell] shall assume and be wholly compensated up to one half (1/2) of the total amount he has paid in satisfying the debt on his [2013] note. This will occur only when [Hiemi] voluntarily sells the home or if there is a foreclosure by the superior lien holders."

¶ 14 On July 13, 2017, Russell filed a notice of appeal. However, due to the reserved issues relating to the parties' civil litigation, Russell was allowed to voluntarily dismiss his appeal without prejudice on January 31, 2018. The civil litigation was dismissed without prejudice on March 2, 2020. Therefore, Russell filed a timely second notice of appeal on March 31, 2020.

¶ 15                                    II. ANALYSIS

¶ 16 At the outset, it is important to note that neither party challenges the trial court's decision to treat Hiemi's nonmarital home and property as nonmarital property. The sole issue on appeal is focused on the debt from the 2013 loan, originally totaling $99,472.35, which the trial court assigned to Russell. Relying on section 503(a)(6.5) of the Act, 750 ILCS 5/503(a)(6.5) (West

5

2016), Russell contends the trial court erred by failing to recognize that clear and convincing evidence established the 2013 loan was a nonmarital debt that must be assigned to Hiemi.[3]

¶ 17    Generally, a finding that property is marital or nonmarital is reviewed against the manifest weight of the evidence. *In re Marriage of Zamudio and Ochoa*, 2019 IL App (3d) 160537, ¶ 14. However, if the facts are undisputed and the credibility of the witnesses is not at issue, our review is *de novo*. *Id.* We conclude *de novo* review is appropriate in this case. See *id.*

¶ 18    The property owned by the parties in a dissolution proceeding belongs to either the husband's estate, the wife's estate, or the marital estate. *In re Marriage of James and Wynkoop*, 2018 IL App (2d) 170627, ¶ 20. For distributions of property, "all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage *** is presumed marital property." 750 ILCS 5/503(b)(1) (West 2016). This presumption includes nonmarital property "transferred into some form of co-ownership between the spouses, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property." *Id.* The presumption is overcome with clear and convincing evidence "that the property was acquired by a method listed in subsection (a) of this Section [503]." *Id.* Relevantly, the "method[s]" include:

    (6) property acquired before the marriage ***;

    (6.5) all property acquired by a spouse by the sole use of non-

marital property as collateral for a loan that then is used to acquire property

---

[3]Portions of section 503, pertinent to this case, were amended by the General Assembly, effective January 1, 2016. Those portions have remained substantially the same since that date. Section 801(b) of the Act, 750 ILCS 5/801(b) (West 2016), states the "Act applies to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." The first posthearing order was entered on June 6, 2016, and the interim order of dissolution of marriage was entered on August 2, 2016. All other orders listed in Russell's notice of appeal are dated after January 1, 2016. Thus, on appeal, we apply the version of section 503 existing after January 1, 2016.

during the marriage; to the extent that the marital estate repays any portion of the loan, it shall be considered a contribution from the marital estate to the non-marital estate subject to reimbursement." *Id.* § 503(a)(6), (6.5).[4]

¶ 19    Essentially, the "method[s]" stated in section 503(a) represent statutory exceptions to the presumption that property acquired by either spouse after the marriage, including debts, is marital property. See *id.* § 503(a). Consequently, property acquired by the "method[s]" stated in section 503(a), including debts, "is known as 'non-marital property.' " See *id.* The party claiming that property is nonmarital has the burden of proof. *In re Marriage of Stuhr*, 2016 IL App (1st) 152370, ¶¶ 51, 57. All doubts with respect to the nature of the property must be resolved in favor of a finding that the property is marital. *In re Marriage of Steel*, 2011 IL App (2d) 080974, ¶ 57.

¶ 20    In this case, Russell emphasizes that Hiemi "unequivocally maintained" the marital home and property were her nonmarital property and "vehemently protested" any contention that the residence, purchased by Hiemi before the marriage, was transmuted into marital property. Since Hiemi's view prevailed in the trial court, Russell argues the trial court should have similarly assigned Hiemi all debts that she voluntarily secured with the nonmarital home and property. Relying on section 503(a)(6.5), Russell reasons the 2013 loan, used to purchase a spare parcel of property and to build and furnish Hiemi's beauty salon, was acquired by the "sole use" of that nonmarital property as collateral. Without a beneficial interest, Russell argues the trial court improperly saddled him with the obligation of investing his post-dissolution income in

---

[4]With respect to the "reimbursement" referenced above, section 503(c)(2)(A) provides:
"When one estate of property makes a contribution to another estate of property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation. No such reimbursement shall be made with respect to a contribution that is not traceable by clear and convincing evidence or that was a gift. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property that received the contribution." 750 ILCS 5/503(c)(2)(A) (West 2016).

improvements to Hiemi's nonmarital home and property. Russell submits the trial court erred by awarding him "an illusory and incalculable lien" on the residence that was meaningless.

¶ 21    Hiemi responds by arguing, in the context of section 503(a)(6.5), the 2013 loan was not acquired during the marriage by "a spouse." Instead, the loan was acquired by each spouse in order to benefit the marriage and allow Hiemi to earn income from operating a beauty salon. On this basis, Hiemi argues the 2013 loan, assigned to Russell, does not trigger the section 503(a)(6.5) exception to the rule that property acquired after the marriage is presumed to be marital property. Thus, Hiemi maintains the 2013 loan represents a marital debt. However, even if this court finds the debt from the 2013 loan was nonmarital, Hiemi submits the trial court correctly required Russell to make payments on the balance of that loan.

¶ 22    Turning to the statute, we conclude section 503(a)(6.5) applies to the assets and debts associated with the 2013 loan, assigned by the trial court to Russell. The 2013 loan was secured by and meant, in part, to increase the value of Hiemi's nonmarital home and property by building a beauty salon for the purpose of generating income. As a matter of law, we agree the 2013 loan was "acquired by a spouse," Hiemi, "by the sole use" of the nonmarital home and property "as collateral." See 750 ILCS 5/503(a)(6.5) (West 2016).[5]

¶ 23    Unlike the spare parcel of property, Russell did not acquire an ownership interest in the beauty salon built in the shed on Hiemi's nonmarital property. See *In re Marriage of Nagel*, 133 Ill. App. 3d 498, 505 (1985) (Fourth District recognizing, the "mere cosigning of a mortgage note by one spouse on the other spouse's non-marital property is not equivalent to transferring

---

[5]We acknowledge that the 2013 loan was also used to purchase the spare parcel of property. However, the spare parcel of property was found to be a marital asset, presumably because Hiemi allowed Russell to become a joint owner of that property. See *In re Marriage of Vondra*, 2016 IL App (1st) 150793, ¶ 14; accord *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 658 (1998). Neither party takes issue with the agreed sale of the spare parcel of property or the trial court's distribution of the resulting proceeds in this appeal. Therefore, we conclude that the issue warrants no further discussion.

8

the property into joint tenancy and does not transmute the property into marital property."); accord *Drennan v. Drennan*, 93 Ill. App. 3d 903, 907 (1981) (Fourth District holding, the "mere liability on [a] note itself is insufficient to determine whether the property is marital or nonmarital" and the "execution of a mortgage note is insufficient to constitute a transmutation of nonmarital property into marital property."). Undoubtedly, those assets, awarded to Hiemi, were improvements and enhancements to the value of Hiemi's nonmarital home and property.

¶ 24    As such, we conclude the record contains clear and convincing evidence that the debt from the 2013 loan, secured by and meant to improve Hiemi's nonmarital home and property, should be assigned to Hiemi as a nonmarital obligation. A contrary conclusion would contravene section 503(a) and allow Hiemi to take all of "the good" without any of "the bad." In other words, Hiemi would be allowed to retain the security for the 2013 loan, *i.e.*, her nonmarital home and property, along with the resulting improvements and increases in value, without any of the responsibility for paying the remaining debt associated with the 2013 loan that made those improvements possible. See 750 ILCS 5/503(a), (b)(1) (West 2016). Consequently, the trial court erred by relieving Hiemi of the remaining debt from the 2013 loan.

¶ 25    We acknowledge, while spouses are usually required to pay their own nonmarital debt, at least one court has required a spouse to pay the debt associated with the nonmarital asset of the other spouse. See *In re Marriage of Shields*, 167 Ill. App. 3d 205, 207-08 (1988). However, the circumstances of this case are distinguishable and do not justify requiring Russell to pay Hiemi's nonmarital debt. See *id.* The purpose of the 2013 loan was, in part, to invest in and enhance the value of Hiemi's nonmarital home and property. Hiemi retained her status as the sole owner of the nonmarital home and property and the assets associated with the 2013 loan. As a direct result, Hiemi is able to remain "gainfully employed" in order to repay the 2013 loan. See *id.* at 207.

9

Further, there is no indication that Hiemi is currently not "in relatively good health," such that she is physically unable to generate income after the dissolution of this marriage. See *id.*

¶ 26    Absent such "special circumstances," our conclusion is consistent with the governing version of section 503(a) and the case law from this District stating, "the spouse incurring non-marital debts should be required to pay them." *In re Marriage of Lees*, 224 Ill. App. 3d 691, 695 (1992); see also *In re Marriage of Toole*, 273 Ill. App. 3d 607, 618 (1995) (Second District stating, "[j]ust as a party is entitled to retain nonmarital assets, a party is also subject to liability, absent special circumstances, for debts incurred on account of those assets."). If Russell has repaid the 2013 loan since the trial court's resolution of this case in 2017, then, on remand, Russell may seek a reimbursement under section 503(a)(6.5) and (c)(2)(A). See 750 ILCS 5/503(a)(6.5), (c)(2)(A) (West 2016); *In re Marriage of Snow*, 277 Ill. App. 3d 642, 649, 653 (1996); *In re Marriage of Albrecht*, 266 Ill. App. 3d 399, 400-401, 405 (1994). However, Russell retains the burden of proof on that issue. See *Stuhr*, 2016 IL App (1st) 152370, ¶ 61.

¶ 27    In the event that our court determined the trial court should have assigned the 2013 loan to Hiemi as a nonmarital debt, Hiemi has requested for our court to remand the matter with directions for the trial court to reexamine its division of marital property. After careful consideration, we deny Hiemi's request. The assignment of the 2013 loan as Hiemi's nonmarital debt does not entitle Hiemi to a larger portion of marital property in order to counterbalance the impact of our decision. We note that the prolonged duration of the dissolution proceeding has now exceeded the total length of the parties' relatively short marriage. A remand for the trial court to revisit settled matters, in proceedings that have often taken an acrimonious tone, would be counterproductive and unnecessarily delay the conclusion of this dissolution proceeding.

## III. CONCLUSION

The judgment of the circuit court of Mercer County is reversed and remanded.

Reversed and remanded.